HECKER and others, Respondents, vs. GUNDERSON and others (STATE BOARD OF HEALTH), Appellants.*

*September 15—October 10, 1944.*

* Motion for rehearing denied, with $25 costs, on December 19, 1944.

658

660

For the appellants there were briefs by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

For the respondents there was a brief by *Wilkie, Toebaas, Hart & Jackman* of Madison, and oral argument by *Oscar T. Toebaas.*

MARTIN, J.   The action is one for a declaratory judgment under sec. 227.05, Wis. Stats.   The action was commenced

by the service of summons and complaint.  Sec. 227.05 provides:

"(1)  Except as otherwise specifically provided by statute, the validity of any rule may be judicially determined upon petition for a declaratory judgment addressed to the circuit court of Dane county.  The court shall hear the petition and render a declaratory judgment thereon only when it appears from the petition and the evidence presented in support thereof that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the petitioner.

"(2)  A declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question.  In rendering judgment, the court shall give effect to any pertinent (a) constitutional limitations upon the powers of the agency; (b) statutory limits upon the authority of the agency; (c) if the rule in question is an interpretative rule, the limits of correct interpretation; and (d) statutory requirements concerning rule-making procedures.

"(3)  Whenever a decision upon the validity of a rule requires a decision upon an issue of fact concerning the applicability of the rule to the petitioner, the court shall, after deciding the pertinent legal questions, refer the case to the agency for determination of the fact issue under the declaratory ruling procedure provided in section 227.06.  Review by the courts of the agency determination may thereafter be had in the manner prescribed for such cases."

The demurrer in behalf of all defendants was on the ground that the complaint does not state facts sufficient to constitute a cause of action.  The demurrer raises only the question whether the complaint states a proper case for declaratory relief.  Sec. 146.18 (1), Wis. Stats., provides:

"The state board of health shall prepare and submit to the proper federal authorities a state plan for maternal and child health services.  Such plan shall conform with all requirements

governing federal aid for this purpose and shall be designed to secure for this state the maximum amount of federal aid which can be secured on the basis of the available state, county, and local appropriations. It shall make such reports, in such form and containing such information, as may from time to time be required by the federal authorities, and comply with all provisions which may be prescribed to assure the correctness and verification of such reports."

The State Board of Health, pursuant to said section, did prepare and submit to the children's bureau of the United States department of labor a plan for maternal and child-health services in conformity with the requirements governing federal aid with a view to securing for the state the maximum amount of federal aid. Prior to July 14, 1943, defendants, acting as the State Board of Health, promulgated a rule that funds obtained from the children's bureau under the Federal Appropriations Act should not be used to pay any person furnishing obstetrical care to wives of servicemen unless such person be licensed to practice medicine, be a graduate of the medical schools approved by the council on medical education of the American Medical Association, and be licensed to practice in Wisconsin. None of the plaintiffs are licensed to practice medicine and surgery, nor are they graduates of such schools.

The Federal Appropriations Act, 1944, contained the following provisos:

"*Provided,* That no part of any appropriation contained in this title shall be used to promulgate or carry out any instruction, order, or regulation relating to the care of obstetrical cases which discriminates between persons licensed under state law to practice obstetrics: *Provided further,* That the foregoing proviso shall not be so construed as to prevent any patient from having the services of any practitioner of her own choice, paid for out of this fund, so long as state laws are complied with."

On July 14, 1943, the children's bureau revoked the instructions requiring minimum qualifications for physicians participating in the EMIC plan in so far as such instructions related to obstetrical cases in order to comply with the terms of the federal law.  On or about said date the children's bureau requested the state health agencies to resubmit a modified plan, or a new plan, for obstetrical care of wives of enlisted men, said plan to be accompanied by an opinion of the state attorney general certifying that the plan complied with state law.  On October 20, 1943, the State Board of Health obtained an opinion from the attorney general (XXXII Op. Atty. Gen. 395) which approved the former plan excluding osteopaths, and held that osteopaths were permitted to practice midwifery only and not obstetrics.  The State Board of Health then resubmitted to the children's bureau the former plan which limited participation in the EMIC plan to persons licensed to practice medicine and surgery, and who are graduates of certain approved schools.  Thereupon, the children's bureau of the United States department of labor approved the plan submitted by the State Board of Health.  That plan is being carried out by the children's bureau.  It was the approval of the plan by the federal bureau that gave the EMIC program its vitality.

From the foregoing, we conclude that the allegations of the complaint, as well as the relief demanded, are solely concerned with the proper distribution of federal funds by a federal administrative board, through the Wisconsin State Board of Health acting as its agent.  The several appropriations made by congress to carry out the EMIC program were all made to the United States department of labor, children's bureau, which bureau allots the funds to the several states to carry out the program according to plans approved by the federal bureau.  That puts this controversy out of our reach. No facts are alleged in the complaint to the effect that any

osteopath has been deprived of the right to practice obstetrics or that any such action has been threatened. Neither is any declaration demanded along this direction. The pleadings, therefore, state no cause of action for declaratory relief on this point, and it hardly needs to be said that this determination neither forecloses nor predetermines the merits of such an action.

*By the Court.*—Order reversed. Cause remanded with directions to enter an order sustaining the demurrer, and dismissing the action.