KEGONSA JOINT SANITARY DISTRICT, TOWNS OF DUNN & PLEASANT SPRINGS, DANE COUNTY, Plaintiff-Appellant, v. CITY OF STOUGHTON, and others, Defendants-Respondents.

Supreme Court

*No. 76–437. Argued January 2, 1979.—Decided January 30, 1979.*
(Also reported in 274 N.W.2d 598.)

134

For the appellant there were briefs and oral argument by *Lloyd A. Schneider* of McFarland.

For respondent City of Stoughton there was a brief by *Bruce K. Kaufmann* and *Jenswold, Studt, Hanson, Clark & Kaufmann,* and oral argument by *Bruce K. Kaufmann,* all of Madison.

For respondent Dane County Regional Planning Commission there was a brief by *John E. Knight, J. Leroy Thilly* and *Boardman, Suhr, Curry & Field,* and oral argument by *J. Leroy Thilly,* all of Madison.

For respondent Department of Natural Resources the cause was argued by *Theodore L. Priebe,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C.J.  The broad subject matter of the present case involves municipal efforts to provide environmentally safe and technologically sound sewerage collection and disposal systems. It is a matter of state-wide—indeed nation-wide—concern. Problems which arise in this area frequently require the balancing of competing and fundamentally irreconcilable interests— public and private, local and regional.

Plaintiff-appellant Kegonsa Joint Sanitary District (Kegonsa) is a municipal corporation created by the Towns of Dunn and Pleasant Springs in 1967. Defendants-respondents are the City of Stoughton (Stoughton), the Wisconsin Department of Natural Resources (DNR), and the Dane County Regional Planning Commission (Planning Commission), a state advisory commission established under sec. 66.945 (2), Stats.

For some time prior to 1972, both Kegonsa and Stoughton were engaged in efforts to plan and finance the upgrading of their individual municipal sewerage collection and disposal systems. Pursuant to the Water Pollution Control Act Amendment of 1972, P.L. 92–500, 33 USC, sec. 1251 et seq., both Kegonsa and Stoughton

individually sought funding for these sewerage construction projects. Eligibility for grant approval required priority placement for the projects by the DNR.[1] The Planning Commission, as authorized by sec. 66.945(8), Stats., conducted studies of the proposed treatment works.[2] In May, 1972, the Planning Commission issued

[1] 33 USC, p. 64, sec. 1284, declares in relevant part:

"1284 **Limitations and conditions**

"(a) Before approving grants for any project or any treatment works under section 1281(g)(1) of this title the Administrator shall determine—

"(1) that such works are included in any applicable areawide waste treatment management plan developed under section 1288 of this title;

"(2) that such works are in conformity with any applicable State plan under section 1313(e) of this title;

"(3) that such works have been certified by the appropriate State water pollution control agency as entitled to priority over such other works in the State in accordance with any applicable State plan under section 1313(e) of this title. . . ."

Secs. 144.21 and 144.23, Stats., direct the Department of Natural Resources to establish criteria for determining priorities among municipal treatment projects for state and federal funding. The department's priority rating system and its procedures for determining project priority value are set forth in chs. NR 125 and NR 160 of the Wisconsin Administrative Code.

[2] "66.945 **Creation, organization, powers and duties of regional planning commissions.** . . .

"(8) FUNCTIONS, GENERAL AND SPECIAL. (a) The regional planning commission may conduct all types of research studies, collect and analyze data, prepare maps, charts and tables, and conduct all necessary studies for the accomplishment of its other duties; it may make plans for the physical, social and economic development of the region, and may adopt by resolution any plan or the portion of any plan so prepared as its official recommendation for the development of the region; it may publicize and advertise its purposes, objectives and findings, and may distribute reports thereon; it may provide advisory services on regional planning problems to the local government units within the region and to other public and private agencies in matters relative to its functions and objectives, and may act as a co-ordinating agency for programs and activities of such local units and agencies as they relate to its objectives."

a recommendation that wastewater from both Kegonsa and Stoughton be treated in a single sewerage treatment plant. This recommendation was approved by the DNR and the United States Environmental Protection Agency (EPA).

Kegonsa was notified of the approval by the DNR and the EPA of Stoughton's plan for a single disposal plant to be constructed in the City of Stoughton on the banks of the Yahara River in a letter from the DNR dated February 6, 1973. Kegonsa did not attempt to obtain either state or federal administrative or judicial review of this decision at the time.

The DNR and EPA subsequently approved Stoughton's application for aid and funds for the Stoughton disposal plant were provided. Pursuant to 33 USC, secs. 1282 and 1283, the EPA contracted to pay Stoughton the 75 percent federal share of the cost of construction of the treatment works. It should be noted that the grant was awarded to Stoughton alone.[3]

Kegonsa ultimately accepted the idea of a single disposal plant located in the City of Stoughton, and applied for a Federal Farmers Home Administration loan and DNR assistance to finance construction of a waste water collection system to tie Kegonsa into the Stoughton plant. In March of 1976 both the loan and a commitment for aid were denied.

On March 23, 1976, Kegonsa filed suit in the Circuit Court for Dane County against the City of Stoughton, the DNR, and the Planning Commission. Kegonsa sought to enjoin Stoughton from continuing to build its sewerage disposal plant and further to enjoin the DNR from au-

---

[3] Apparently Kegonsa did not attempt to establish with Stoughton an "intermunicipal agency" which would have allowed it to become a party to Stoughton's grant application process. *Cf.* 40 CFR, sec. 35.905–14.

thorizing the payment of state and federal funds for that purpose until a fractional share of the plant (determined by use potential) was conveyed to Kegonsa, and state and federal funding approved for the construction of a sewerage collection system and the necessary interceptors to tie the Kegonsa system into the Stoughton plant.[4] Alternatively, Kegonsa asks the court to order the Planning Commission to rescind its original recommendation of May, 1972 that wastewater from Kegonsa and Stoughton be treated in a single sewerage treatment plant and to issue a new recommendation that Kegonsa be allowed to construct a separate sewerage disposal plant for disposal of its own wastewater. Kegonsa's alternative request for relief would also require the court to order the DNR to authorize state and federal funding for construction of this separate disposal plant. The plaintiff further demands monetary damages from DNR because of alleged fraud and deceit.

All three defendants moved for dismissal of the action, asserting variously failure to state a claim upon which relief could be granted, lack of subject matter jurisdiction, and lack of personal jurisdiction over the DNR.

All three defendants moved to dismiss the action upon the ground it fails to state a claim upon which relief can be granted. Stoughton additionally argues the court does not have subject matter jurisdiction; and the DNR argues the court does not have personal jurisdiction over it.

Defendant Stoughton makes the initial argument that the state court lacks subject matter jurisdiction over what in the present case is essentially a federal claim, involving unjoined federal officers and agencies and necessarily affecting federal appropriations policy.

---

[4] Kegonsa's claim for injunctive relief is moot, construction of the Stoughton disposal plant having already been completed.

■

In *Dowd Box Co. v. Courtney*, 368 U.S. 502, 507–08 (1962), the Supreme Court summarized the applicable rule:

"We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule. This Court's approach to the question of whether Congress has ousted state courts of jurisdiction was enunciated by Mr. Justice Bradley in *Claflin v. Houseman*, 93 U.S. 130, and has remained unmodified through the years. 'The general question, whether State courts can exercise concurrent jurisdiction with the Federal courts in cases arising under the Constitution, laws, and treaties of the United States, has been elaborately discussed, both on the bench and in published treatises. . . [and] the result of these discussions has, in our judgment, been . . . to affirm the jurisdiction, where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case.' "

Similarly this court has held that:

"[W]hen there is no express provision excluding jurisdiction or when there is no incompatibility in allowing concurrent jurisdiction, the courts of Wisconsin will exercise subject-matter jurisdiction and apply the federal law." *Kaski v. First Federal S. & L. Asso. of Madison*, 72 Wis.2d 132, 142, 240 N.W.2d 367 (1976).[5]

In *Kaski*, the court concluded that federal law had preempted the field in regard to regulations of federal savings and loan associations. However, the courts of the state were still deemed to have subject matter jurisdiction over the dispute.

---

[5] *Also see Terry v. Kolski*, 78 Wis.2d 475, 254 N.W.2d 704 (1977).

The Supreme Court of New Hampshire recently considered basically the same question raised here, *e.g.*, state court jurisdiction over claims which arise within the framework of the Federal Water Pollution Control Act Amendments of 1972.[6] The court noted that the Act envisioned extensive cooperation between the federal government and the individual states in the fight against water pollution. The court's analysis of the Act and its legislative history is persuasive:

"The legislative history of the Federal Water Pollution Control Act Amendments of 1972 (P.L. 92–500) and of its predecessor, the Water and Environmental Quality Improvement Act of 1970 (P.L. 91–224, 84 Stat. 91), indicates that the Congress did not intend to preempt the jurisdiction of the several States with respect to water pollution control within their borders. *See* 33 U.S.C. §1251(b); Rep. No. 92–414, 92d Cong., 1st Sess. 1–3 (1971) [hereinafter Senate Report] citing as an important principle of public policy: 'The States shall lead the national effort to prevent, control and abate water pollution. . . the Federal role has been limited to support of, and assistance to, the States'. Id. at 1. Numerous provisions in the Act evince this intent. Section 1370 of title 33 reserves to the States the power to enact more stringent legislation to control water pollution; section 1342(a)(1) in conjunction with section 1311 requires that federal licensees comply with applicable state laws as a condition of license. To the same effect, section 1365(c) authorizing 'citizen suits' specifically states that the enforcement provisions contained therein shall not restrict any right under any statute or common law to seek enforcement or other relief 'including relief against the Administrator or a State agency'. 33 U.S.C. §1365(e). Although review of the State administrator's action is not necessarily confined to the State courts in all cases, it appears that Congress sought to preserve state review procedures so long as not in conflict with federal law. *See Power Authority v. Dep't of Environ-*

---

[6] *Town of Sutton v. Water Supply & Pollution Control Com'n*, 116 N.H. 154, 156, 355 A.2d 867 (1976).

*mental Conservation,* 379 F. Supp. 243 (N.D.N.Y. 1974) ; Senate Report at 69." *Town of Sutton, supra,* 116 N.H. at 156.

The congressional declaration of goals and policy in 33 USC, p. 15, sec. 1251, is particularly significant:

"(b) It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources, and to consult with the Administrator in the exercise of his authority under this chapter. It is the policy of Congress that the States manage the construction grant program under this chapter and implement the permit programs under sections 1342 and 1344 of this title. . . ."

In view of the general policy in favor of concurrent jurisdiction in cases arising under federal laws, the emphatically non-preemptive nature of the Federal Water Pollution Control Act, and the fact that disposition of the claims in the present case is not incompatible with federal law, statutory or constitutional, it was error for the trial court to base its granting of the motion to dismiss on the state court's alleged lack of subject matter jurisdiction over federally preempted claims.[7]

As to the DNR, Kegonsa in its complaint makes the following allegations: That the department promised to authorize the granting of state and federal aids to Kegonsa for the construction of its sewer collection and interceptor systems and then refused to make good its promise; that the department lured Kegonsa into accepting the notion of a single disposal plant for both Kegonsa and Stoughton wastewater, and then intentionally manipulated its rules and priority ratings to prevent

[7] Stoughton's citation of this court's holding in *Hecker v. Gunderson,* 245 Wis. 655, 663, 15 N.W.2d 788 (1944), is not apropos.

Kegonsa from receiving state and federal aids to construct the systems needed to link the district up to the Stoughton plant; that the department wrongfully authorized the payment of state and federal funds for the construction of the Stoughton plant; that the department engaged in deceitful and fraudulent acts which caused Kegonsa to suffer damages.

The DNR argues that the trial court properly dismissed Kegonsa's complaint against it for lack of personal jurisdiction, based on the state's immunity from tort suits and on Kegonsa's alleged failure to follow ch. 227, Stats., review procedures.

The general principles of sovereign immunity were recently summarized by this court in *Lister v. Board of Regents,* 72 Wis.2d 282, 291, 240 N.W.2d 610 (1976) :

"The concept of sovereign immunity in this state derives from art. IV, sec. 27 of the Wisconsin Constitution, which provides:

" 'The legislature shall direct by law in what manner and in what courts suits may be brought against the state.'

From this provision the rule developed that the state cannot be sued without its consent. This immunity is procedural in nature and, if properly raised, deprives the court of personal jurisdiction over the state.

"The principal question raised by an objection based on the state's sovereign immunity is whether the action, in fact, constitutes a 'suit against the state.' It has been said that the state's immunity from suit extends to its arms or agencies."

Kegonsa maintains that the DNR is not merely an arm of the state and can consequently be sued as an "independent going concern."

"The legislature may create an agency with independent proprietary powers or functions and sufficiently

independent of the state to be sued as such. When the state so creates an agency, it waives its sovereign immunity in that respect." *Townsend v. Wisconsin Desert Horse Asso.*, 42 Wis.2d 414, 423, 167 N.W.2d 425 (1969). *See also Majerus v. Milwaukee County*, 39 Wis.2d 311, 159 N.W.2d 86 (1968); *Sullivan v. Board of Regents of Normal Schools*, 209 Wis. 242, 244 N.W. 563 (1932); *Metzger v. Department of Taxation*, 35 Wis.2d 119, 150 N.W.2d 431 (1967).

However, there is no merit in Kegonsa's claim that the DNR is of such an independent character that it comes under this traditionally narrow exception. The department, despite its broad powers, is only an administrative body, an arm or agency of the state. The state's immunity therefore extends to it. Plaintiff makes the vague assertion that the DNR might be amenable to suit on an estoppel theory. Plaintiff's reliance on this doctrine is misplaced. As the court declared in *Lister, supra*, 72 Wis.2d at 294:

"As a general rule the legislature is the proper body to authorize suits against the state. An agency or officer of the state may not waive the state's immunity from suit unless specifically authorized to do so. . . In addition, it appears that the principle of estoppel will not be applied to deprive a state of its sovereign rights." *See also,* Annot., *Applicability of doctrine of estoppel against government agencies*, 1 A.L.R.2d 338, 344, sec. 5.

The actions of the DNR and, as pointed out below, the actions of the Planning Commission, are covered by the principle—well-established in Wisconsin—that in the absence of express legislative authorization the state may not be subjected to suit.

"It is not disputed that it is an established principle of law that no action will lie against a sovereign state in the absence of express legislative permission. It is further established that when a sovereign permits itself to

be sued upon certain conditions, compliance therewith is a jurisdictional matter, and a suit against the sovereign may not be maintained unless such conditions are complied with." *State ex rel. Martin v. Reis,* 230 Wis. 683, 685, 284 N.W. 580 (1939).

"The right to appeal from an administrative agency's determination is statutory and does not exist except where expressly given and cannot be extended to cases not within the statute." *Pasch v. Department of Revenue,* 58 Wis.2d 346, 352, 206 N.W.2d 157 (1973); *Universal Organization of Municipal Foremen, Supervisors & Administrative Personnel v. WERC,* 42 Wis.2d 315, 322, 166 N.W.2d 239 (1969), citing *Wisconsin Telephone Co. v. Wisconsin Employment Relations Board,* 253 Wis. 584, 589, 34 N.W.2d 844 (1948).

Furthermore, where a statute relating to an administrative agency provides a direct method of judicial review of agency action, such method of review is generally regarded as exclusive, especially where the statutory remedy is plain, speedy, and adequate. *Underwood v. Karns,* 21 Wis.2d 175, 179–80, 124 N.W.2d 116 (1963); *see also Perkins v. Peacock,* 263 Wis. 644, 58 N.W.2d 536 (1953).

The viability, as a jurisdictional matter, of the claim against the DNR in the present action therefore depends upon compliance with the statutory method of review prescribed for administrative determinations in ch. 227 of the statutes. This must be the rule, unless it can be said that the statutory method does not permit adequate resolution of the issues raised.[8]

Kegonsa contends that since the complaint in the present case is phrased in terms of fraudulent and deceitful acts, wrongful authorization and wrongful denial of financial aids and intentional harm, it falls within the exception to the general rule that ch. 227 procedures

---

[8] *Kmiec v. Town of Spider Lake,* 60 Wis.2d 640, 646, 211 N.W. 2d 471 (1973), which involved a challenge to the constitutional validity of a zoning ordinance, is an example of such an exception.

provide the exclusive method of review of administrative action. In *State ex rel. 1st Nat. Bank v. M & I Peoples Bank,* 82 Wis.2d 529, 263 N.W.2d 196 (1978), this court considered a similar claim, *i.e.,* that ch. 227 was not meant to preclude a separate quo warranto action. The court gave careful consideration to the conflicting policy considerations involved. However, the argument in the circumstances of the case was rejected. The court emphasized that the issue of exceptions to the statutory rule must be approached "with an understanding that the legislature has created chapter 227 to afford a unified scheme of judicial review." *Supra* at 543.

Sec. 227.20, Stats., Scope of review, authorizes the reviewing court to review alleged irregularities in procedure before the agency, disputed issues of agency procedure, the fairness of the proceedings, the correctness of the action. Furthermore, the court has authority to reverse or remand the case to the agency if it finds the agency exceeded its jurisdiction or otherwise violated a constitutional provision. Finally, the court in rendering its decision has broad discretion to provide whatever relief is appropriate.

Sec. 227.20, Stats., makes it clear that ch. 227 by its terms encompasses the type of administrative wrongdoing alleged in the complaint when done by an agency carrying out its official responsibilities under a statute. The policy consideration discussed in *State ex rel. 1st Nat. Bank, supra,* which influences the issue of whether the statutory method of review should be deemed exclusive also weighs in favor of applying the general rule in the present action. There is no reason to believe from the facts given that the statutory method of review will not be "plain, speedy, and adequate." The argument might be made, however, that since tort damages against the state or an arm or agency of the state are not avail-

able under ch. 227, statutory review would in fact prove inadequate in the present case. We believe this contention is not tenable. It is true that ch. 227 does not contain the type of clear and definite language of consent to suit required in order to find a legislative waiver of the state's tort immunity defense.[9] Consequently tort damages against the agency are unavailable and could not be awarded in a statutory review. However, such relief would be barred in the present situation whatever the method of review, given the facts that the agency acted within the scope of its jurisdictional authority[10] and that there is no statutory recognition under Wisconsin law of liability for tort in such circumstances. Furthermore, while wilful and intentional misconduct in excess of jurisdictional authority may subject a public officer to personal liability, the complaint joins no official of the DNR. Neither does it contain specific and definite allegations of malicious and intentional misconduct by named officials, misconduct of the sort which could in fact expose such officials to tort liability. *Cf. Lister,*

---

[9] *Cf. Townsend v. Wisconsin Desert Horse Asso.,* 42 Wis.2d 414, 421, 167 N.W.2d 425 (1969).

[10] Kegonsa asserts that the department acted fraudulently and deceitfully and therefore acted outside the bounds of its jurisdictional authority. However, it offers no particulars in support of this bold allegation. The general rule is clear: fraud, when sought to be made a ground for relief must be so alleged as to disclose the facts constituting fraud. *Steinberg v. Saltzman,* 130 Wis. 419, 110 N.W. 198 (1907); *New Bank v. Kleiner,* 112 Wis. 287, 87 N.W. 1090 (1901); *see also Tainter v. Lucas,* 29 Wis. 375, 383 (1872), where the court concluded "one very important, if not an essential, fact to make a case of fraud against such officers, is, that the board acted arbitrarily and against the evidence . . . ." The allegations of fraudulent acts by the department fall far short of the required specificity. Viewed in a light most favorable to the plaintiff as is required in the proceeding, the facts alleged do not support the conclusion that the agency's acts, even if mistaken or otherwise incorrect, were outside the bounds of its jurisdictional authority. *See Lister, supra,* 310.

*supra,* at 302–03.. In sum, this is not an "exceptional case." We therefore conclude that ch. 227 review is the exclusive remedy available to Kegonsa with respect to its claims against the DNR.

Ch. 227 review procedures having been determined to be the sole remedy available to Kegonsa with regard to its claims against the DNR, two questions remain to be considered: What are the procedures prescribed by the statute in such cases; were those procedures properly and timely followed by plaintiff in the present case.

Kegonsa's claims are centered on two acts of the DNR: (1) the approval of the Stoughton disposal plant plans for financial aids; (2) the denial of priority status for funding to Kegonsa for either its proposed "tie in" construction plans or its separate disposal plant plans.

The relevant statutory review procedures provide in part as follows:

"144.56 **Review of orders.** Any owner or other person in interest may secure a review of the necessity for and reasonableness of any *order* of the department of natural resources in the following manner:

"(1) They shall first file with the department a verified petition setting forth specifically the modification or change desired in such order. Such petition must be filed within 60 days of the issuance of the orders sought to be reviewed. . . ." (Emphasis added.)

"227.15 **Judicial review; orders reviewable.** Administrative *decisions,* which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, except the decisions of the department of revenue, the commissioner of banking, the commissioner of credit unions and the commissioner of savings and loan, shall be subject to judicial review as provided in this chapter." (Emphasis added.)

"227.16 **Parties and proceedings for review.** (1) Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.15 shall be

entitled to judicial review thereof as provided in this chapter.

"(a) Proceedings for review shall be instituted by serving a petition therefor personally or by registered mail upon the agency or one of its officials, and by filing such petition in the office of the clerk of the circuit court for the county where the trial shall be held. . . all within 30 days after the service of the decision of the agency upon all parties. . . ."

The first matter which must be resolved is whether the determinations in question were orders or decisions. If orders, they were subject to initial department review. Such review was not requested by Kegonsa after either determination. If decisions, they were eligible for direct judicial review provided statutory procedures were timely followed. This court addressed the "decision versus order" issue in *Norway v. State Board of Health,* 32 Wis.2d 362, 145 N.W.2d 790 (1966). In that case the court concluded that DNR approval of sewerage treatment facility plans was a decision subject to direct judicial review, and not an order. After analyzing sec. 144.56, Stats., the court declared at 369:

"We think these sections refer to an order in a technical sense because the review provided is limited to the necessity for and the reasonableness of the order."

We conclude, in both instances, the ruling of the DNR was a decision subject to direct judicial review pursuant to secs. 227.15 and 227.16, Stats. Therefore DNR's argument that preliminary department review of the two decisions was prerequisite to proper circuit court jurisdiction pursuant to sec. 144.56 is rejected.

The claims asserted against the DNR, if otherwise valid, were properly before the circuit court pursuant to sec. 227.15, Stats., if Kegonsa timely followed in each instance the statutorily prescribed procedure. Sec. 227.16, quoted above, requires that proceedings for ad-

ministrative review be instituted within thirty days after service of the decision in question on the parties. Failure to comply is fatal; it requires dismissal for lack of subject matter jurisdiction.[11]

Kegonsa's demand for review of the DNR decision approving the Stoughton plan for federal and state funding was clearly not timely. Kegonsa was notified of the department's decision by letter dated February 6, 1973. It instituted this review three years later in March, 1976. In view of this failure to comply with the timing requirements of sec. 227.16, Stats., there can be no question that this claim for review was properly dismissible for lack of subject matter jurisdiction.

Further, while it is unnecessary to reach the matter, it should be noted that there is serious question on the few facts alleged whether Kegonsa was in fact a person whose substantial interests were adversely affected, within sec. 227.16, Stats., by the decision to approve for financing the disposal plant plan proposed by Stoughton. This issue, however, need not be decided in view of the recommended disposition of the untimely claim for review of the department's approval of the Stoughton plan.

The second agency decision challenged in the complaint is the DNR refusal of a commitment for financial aid for Kegonsa's construction plans, either a separate disposal plant or the collection and interceptor systems needed to tie the district into the Stoughton plant. Kegonsa was notified of the decision in March, 1976. Within thirty days a proceeding was instituted in the circuit court. The challenge to the second DNR decision,

[11] *State ex rel. Martin v. Juneau*, 238 Wis. 564, 568, 300 N.W. 2d 187 (1941); *Cudahy v. Department of Revenue*, 66 Wis.2d 253, 224 N.W.2d 570 (1974); *Wisconsin Environmental Decade v. Public Service Comm.*, 84 Wis.2d 504, 513, 267 N.W.2d 609 (1978).

directly reviewable under sec. 227.15, Stats., was thus timely made.

We conclude that the circuit court had personal jurisdiction over the DNR and subject matter jurisdiction over the claim arising out of the department's decision refusing a commitment for financial aid to Kegonsa. Dismissal of this claim for lack of either subject matter or personal jurisdiction was improper. However, the trial court adopted a further ground for dismissal, *i.e.*, failure to state a claim upon which relief can be granted. The validity of this final ground must be considered.

Sec. 227.16(1)(b), Stats., provides that the petition for review shall state the "grounds specified in s. 227.20 upon which petitioner contends that the decision should be reversed or modified." Sec. 227.20 outlines the scope of judicial review. It declares that the reviewing court may reverse or modify a decision which, among other things, is in excess of the statutory authority or jurisdiction of the agency, is affected by other error of law, is made by unlawful procedure or is based on procedural irregularities. The complaint in the present case is far from being a model of legal clarity, coherence and correctness. Much of its language is vague, inflammatory and of no legal consequence. Nonetheless, the facts taken as a whole and viewed in the light most favorable to the plaintiff, as they must be in this proceeding, raise the issue of procedural irregularities and abuse of discretion in the department's treatment of plaintiff's application for financial assistance. Despite the questionable allegations of the complaint, the court is obliged to construe the complaint liberally and to uphold it if it expressly or by reasonable inference states any cause of action.[12]

[12] *Estate of Mayer*, 26 Wis.2d 671, 677, 133 N.W.2d 332 (1965); *De Bauche v. Knott*, 69 Wis.2d 119, 121, 230 N.W.2d 158 (1975).

It is also consistent with legislative policy in Wisconsin to favor judicial review of administrative decisions at the timely instance of any person whose substantial interests are adversely affected.

A word must be said about the nature of the substantial interests allegedly involved in the present case. Kegonsa is in error when it defines these interests in terms of the district's "entitlement" to state and federal funds available to municipalities to finance construction of waste systems, of its apparently unqualified "right" to construct sewerage collection and disposal facilities wherever and however it chooses, and of the "legal entitlement" to have its own sewer and collection system. Entitlement in all the above situations is conditional and is contingent on appropriate administrative approval by the DNR. (*See* secs. 144.04 and 144.07, Stats., regarding approval of plans for proposed sewerage systems; and secs. 144.21 and 144.23 concerning priority rating for federal and state grants in aid.) Furthermore, this approval rests within the discretionary authority of the agency in the exercise of its broad responsibility to "serve as the central unit of state government to protect, maintain and improve the quality and management of the waters of the state. . . ." Sec. 144.025. The DNR correctly classifies these agency determinations as discretionary rather than as ministerial acts. However, it does not follow that the trial court is without authority to review such decisions for procedural irregularities, abuses of discretion and other errors of law.[13] We believe the circuit court erred when it granted the motion to dismiss the claim against the DNR with regard to its

[13] *Cf. Ashwaubenon v. Public Service Comm.*, 22 Wis.2d 38, 45, 125 N.W.2d 647, 126 N.W.2d 657; and *Norway v. State Board of Health, supra,* 32 Wis.2d at 368.

denial of priority status for financial assistance for failure to state a claim upon which relief could be granted.[14]

Kegonsa in its complaint makes the following allegations regarding defendant Planning Commission: That it was influenced by Stoughton to issue a recommendation that there be only one disposal plant, located at Stoughton, with joint interceptor sewers for the disposal of wastewaters from both Stoughton and Kegonsa; that the Planning Commission's recommendation has effectively denied plaintiff the right to construct a separate sewer collection system; that by the commission's actions plaintiff was pressured and induced into accepting "the concept of a joint venture with the City of Stoughton."[15]

The Dane County Regional Planning Commission is an agency of the state. Its determinations are thus arguably within the scope of ch. 227 review procedures providing for judicial review of administrative decisions under sec. 227.15, Stats. This court's analysis of the term "decision" in *Pasch v. Department of Revenue*, 58 Wis.2d 346, 353, 206 N.W.2d 157 (1973), disposes of Kegonsa's claim against the commission:

"Although sec. 227.15, Stats., employs the broad term 'decision' in conferring the power of judicial review, such a term is to be read in accord with the legislative intent and not in its literal sense. . . .
" ' . . .'
"This court has held that it was the legislative intent in sec. 227.15, Stats., to limit judicial review of administrative agency 'decisions' to final orders of the agency."

[14] The department legitimately takes exception to Kegonsa's assertions in its complaint that the court order the department to authorize state and federal funding and approve Kegonsa's construction plans. This court has often pointed out that "a court cannot compel that discretion be exercised in a particular way . . . ." *State ex rel. Knudsen v. Board of Education*, 43 Wis.2d 58, 70, 168 N.W.2d 295 (1969).

[15] In view of the disposition of this claim, detailed below, the merits of these allegations need not be weighed. No opinion is expressed on them here.

The Planning Commission is merely an advisory body. Its determinations are recommendations only. They are not in the nature of final orders, and do not fall within the term "decision" as used in sec. 227.15, Stats. The commission's recommendation in the present case is not reviewable under sec. 227.16, Stats. Neither is review specially authorized under sec. 66.945, the statute which provided for the establishment of such advisory bodies. In addition, since the recommendation lacks the force of law it cannot be said that it adversely affected Kegonsa's substantial interests as further required by sec. 227.16. The motion to dismiss the claim asserted against the Dane County Regional Planning Commission was therefore properly granted by the circuit court.

The remaining claims in Kegonsa's complaint are asserted against the City of Stoughton. Essentially they are that the city financially benefited from the grant to it of state and federal aids; that the city "influenced" the Planning Commission and the DNR to render a decision favorable to it and unfavorable to Kegonsa; that the city intends to hold plaintiff liable for a portion of the costs of the Stoughton disposal plant if Kegonsa makes use of it; and that the city has deprived and continues to deprive Kegonsa of its property rights in the Stoughton disposal plant, which rights Kegonsa acquired through the DNR decision that the waste from the region should be channelled through a single disposal plant and Stoughton's promulgation of a user fee arrangement. These allegations, taken individually or cumulatively, and viewed most favorably to plaintiff fail to state a claim upon which relief could be granted. The motion to dismiss by defendant Stoughton was properly granted for failure to state a claim upon which relief could be granted.

*By the Court.*—The order dismissing the complaint with prejudice as to the City of Stoughton is affirmed; the judgment dismissing the complaint as to Dane County Regional Planning Commission is affirmed; the order dismissing the complaint as to the Department of Natural Resources with respect to the February, 1973 order is affirmed; with respect to the March, 1976 order it is reversed and remanded for further proceedings not inconsistent with this opinion.