Edward BUSSE, and Hovde Development Corp., a general partnership known as River Ridge Joint Venture, Plaintiffs-Appellants,

v.

DANE COUNTY REGIONAL PLANNING COMMISSION, a regional planning commission, Defendant-Respondent.

Court of Appeals

*No. 92–2125. Submitted on briefs May 6, 1993.—Decided December 30, 1993.*

(Also reported in 511 N.W.2d 356.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Bruce K. Kaufmann* and *J. Timothy Lovett* of *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

For the defendant-respondent the cause was submitted on the briefs of *Kristine A. Euclide* and *Thomas G. Wilson* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. Edward Busse and Hovde Development Corporation (together as River Ridge Joint Venture) appeal from an order dismissing their complaint against the Dane County Regional Planning

Commission for failure to state a claim upon which relief may be granted. River Ridge sued the commission, seeking compensatory damages, costs, and attorney fees, alleging that it was injured by certain actions taken by the commission in connection with a proposed real estate development.

The issues are whether the trial court erred when it ruled River Ridge's complaint insufficient to state a claim that the commission: (1) intentionally interfered with River Ridge's contract with the Madison Metropolitan Sewerage District; (2) participated in a civil conspiracy against River Ridge; and (3) deprived River Ridge of the proposed use of its property and thus "took" its property for public use without compensation in violation of the state and federal constitutions.

We conclude that River Ridge's first two claims are barred under the doctrine of sovereign immunity. We also believe the trial court properly dismissed the "taking" claim. We therefore affirm the order.

River Ridge is a general partnership seeking to develop a plat consisting of 101 single-family residential lots in the Town of Westport in Dane County. River Ridge's predecessor in title contracted with the Madison Metropolitan Sewerage District, granting the district an easement to lay, operate, and maintain a sanitary sewer interceptor and main across River Ridge's land. The easement was conditioned upon, among other things, the developer's (now River Ridge's) right to connect its lots to the sewer system.

Because provision of service to the development would require the extension of the district's sewer lines, "technically adequate" plans were to be provided to the district by the developer, together with letters of approval from the governing bodies of any municipalities in which the proposed extension was to be located.

In addition, the project had to be certified as "consistent with adopted plans" of any regional planning commission established in the area to be served. Section 66.24(1)(b), Stats.

Regional planning commissions are advisory bodies created under sec. 66.945, Stats., to "make plans for the physical, social and economic development of the region" and to adopt a master plan in order to secure development of the area in a manner best suited to promote "public health, safety, morals, order, convenience, prosperity or the general welfare," as well as "efficiency and economy in the process of development." Section 66.945(8) and (10). They are created by the governor, upon the petition of local governing bodies in the region, sec. 66.945(2), and the reports and recommendations they may be required to make to local governments and agencies, such as metropolitan sewerage districts, are, by law, "solely advisory." Section 66.945(8).

Pursuant to this statutory scheme, the sewerage district sought the commission's report as to whether the proposed extension to serve the River Ridge development was consistent with the Dane County regional plan. Responding to the request, the commission issued a letter indicating that the proposed extension was inconsistent with regional plans.[1] Based on that advice, the sewerage district refused to approve the

---

[1] The commission's letter stated that the sewer service extension could be brought into compliance with the regional plan if River Ridge met certain conditions the commission previously had imposed on River Ridge's predecessor in title. Because the commission concluded that River Ridge's proposed sewer extension exceeded that of its predecessor in several respects, and that the modified proposal failed to abide by the conditions previously imposed for compliance with the plan, the commis-

extension and deferred action on River Ridge's plans until such time as they could be certified as consistent with the regional plan.

River Ridge asked the Department of Natural Resources to issue a memorandum to the district stating that the extension would be consistent with the Dane County Water Quality Management Plan. The DNR did so, at least with respect to extending service to the initial twenty-nine lots in the development. Despite the DNR memorandum, the district continued in its refusal to approve the extension until such time as the planning commission was able to certify its compliance with the regional plan.

River Ridge then brought this action and, as indicated, the trial court granted the commission's motion to dismiss. As to River Ridge's claim that the commission intentionally interfered with its contract with the district, the trial court ruled that the commission was required by statute to inform the district of its conclusions, and that River Ridge had alleged no facts to establish that the commission "used improper means of inducement" to prevent performance of any contract between River Ridge and the district. As to the conspiracy claim, the court ruled that the complaint was insufficient because it failed to allege facts showing either the formation or operation of a conspiracy, any wrongful acts on the part of any of the alleged conspirators, or any intentional participation in a conspiracy by the commission.

Finally, the court dismissed River Ridge's "taking" claim under federal and state law, concluding that its allegations on the point were "mere conclusions of law" and that it had not alleged that the commission had

---

sion reported to the sewerage district that the extension was inconsistent with adopted regional plans.

533

imposed any legally enforceable restrictions on River Ridge's land.

Whether the facts alleged in a complaint are sufficient to state a claim for relief is a question of law which we review independently on appeal. *Jensen v. Christensen & Lee Ins., Inc.*, 157 Wis. 2d 758, 762, 460 N.W.2d 441, 443 (Ct. App. 1990). For purposes of a motion to dismiss, facts properly pled are taken as admitted, *Evans v. Cameron*, 121 Wis. 2d 421, 426, 360 N.W.2d 25, 28 (1985), and the motion will be granted only when it is quite clear that under no conditions could the plaintiff recover. *Jensen*, 157 Wis. 2d at 763-64, 460 N.W.2d at 443.

## I. Sovereign Immunity

We consider first whether, with regard to the state law claims of intentional interference with contract and civil conspiracy, the commission is immune from suit. We believe that it is.

The doctrine of sovereign immunity originates in article IV, section 27 of the Wisconsin Constitution, which states: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." Under the rule, the state may only be sued upon its express consent; consent to suit may not be implied. *State v. P.G. Miron Constr. Co.*, 175 Wis. 2d 476, 480, 498 N.W.2d 889, 891 (Ct. App. 1993), *review granted* (June 2, 1993).

Generally, the state's immunity from suit extends to its arms or agencies. *Kegonsa Joint Sanitary Dist. v. City of Stoughton*, 87 Wis. 2d 131, 143, 274 N.W.2d 598, 604 (1979). The legislature may, however, "create an

agency with independent proprietary powers or functions and sufficiently independent of the state to be sued as such," and when it does so, it "waives its sovereign immunity in that respect." *Kegonsa*, 87 Wis. 2d at 143-44, 274 N.W.2d at 604.

In *Kegonsa*, the Dane County Regional Planning Commission conducted studies regarding the provision of sewage treatment facilities in the Kegonsa Joint Sanitary District and the City of Stoughton. The commission recommended that wastewater from the Kegonsa district and Stoughton be treated at a single plant, and Stoughton received approval to construct the plant. The district then applied for a loan and for financial assistance from the DNR to finance its connection to the Stoughton plant. Both applications were denied.

The district sued several defendants, including the planning commission and the City of Stoughton, claiming that: (1) the city had improperly exerted influence on the commission to recommend the joint facility; (2) the commission's recommendation effectively denied the district the right to construct a separate sewer system; and (3) the commission's actions induced the district into entering into the joint venture with Stoughton. *Id.* at 153, 274 N.W.2d at 608.

The supreme court affirmed the trial court's dismissal of the district's complaint as to the commission, noting that the commission is "an agency of the state" and concluding that "the actions of the Planning Commission[] are covered by the principle — well-established in Wisconsin — that in the absence of express legislative authorization the state may not be

subjected to suit." *Kegonsa*, 87 Wis. 2d at 144, 153, 274 N.W.2d at 604, 608.[2]

River Ridge argues, however, that whether the planning commission is an "agency of the state" is not dispositive of the sovereign immunity issue because even the *Kegonsa* court recognized that an agency is not entitled to assert sovereign immunity if (1) it is an agency with "proprietary powers or functions" and (2) it is "sufficiently independent of the state to be sued as such." *Id.* at 143-44, 274 N.W.2d at 604. River Ridge claims that, despite what we consider the rather plain language to the contrary in the *Kegonsa* decision, the commission meets both tests and thus may not partake of the sovereign's immunity.

River Ridge bases its argument on three cases: *Townsend v. Wisconsin Desert Horse Ass'n*, 42 Wis. 2d 414, 167 N.W.2d 425 (1969); *Majerus v. Milwaukee County*, 39 Wis. 2d 311, 159 N.W.2d 86 (1968); and *Sullivan v. Board of Regents of Normal Schools*, 209 Wis. 242, 244 N.W. 563 (1932).

In *Townsend*, the supreme court held that the Wisconsin Exposition Department was protected by

---

[2] River Ridge argues that, because the *Kegonsa* court did not analyze whether the commission has proprietary powers or is sufficiently independent of the state, the court's statement that the commission's "actions . . . are covered by the principle [of sovereign immunity]" was merely a *dictum*. We disagree.

The mere absence of detailed analysis does not render a court's plain statement a *dictum*. Indeed, we do not consider the *Kegonsa* court's statement regarding the commission's status as a *dictum* at all. *See State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85, 88 (1981) (when appellate court takes up and discusses a question "germane to, though not necessarily decisive of, the controversy," the discussion is not a *dictum* "but . . . a judicial act of the court which it will thereafter recognize as a binding decision").

sovereign immunity. *Townsend*, 42 Wis. 2d at 424, 167 N.W.2d at 430. According to River Ridge, the *Townsend* court's rationale was that while the exposition department had "proprietary powers," it was not sufficiently independent of the state to be sued as such because the "obligations [of] the department [were] those of the state of Wisconsin." *Id.* River Ridge maintains that because a regional planning commission is responsible for its own obligations under sec. 66.945(15), Stats., it must be considered to be independent of the state and thus not protected by sovereign immunity. We are not persuaded.

The *Townsend* court recognized that the exposition department "ha[d] [the] proprietary functions or powers of a going concern," and the reason it held that the department was not an "independent" agency, was because it was "not set up expressly as a separate corporate or politic body or *given the power to sue or be sued.*" *Id.* (emphasis added). Thus, as we read *Townsend*, the court's conclusion that the department partook of the sovereign's immunity was grounded on the fact that it was not "capa[ble] of being sued as a separate entity." *Id.*

It is true that a regional planning commission, like the exposition department in *Townsend*, has certain proprietary powers under sec. 66.945, Stats. But nowhere in the statute is a planning commission given the power or authority to sue or be sued. And while sec. 66.945(8)(a) gives a commission, in general, "all powers necessary to enable it to perform its functions and promote regional planning," that section goes on to state quite specifically that "[t]he functions of the . . . commission *shall be solely advisory* to the local governments and . . . officials comprising the region."

537

(Emphasis added.) Such advisory functions do not render the planning commission the type of "independent going concern" which is amenable to suit because of its independence from the sovereign.

In *Majerus*, the supreme court allowed a suit to proceed against the Wisconsin State Armory Board, concluding that it was an independent "body politic and corporate" with the power to sue and be sued. *Majerus*, 39 Wis. 2d at 315, 159 N.W.2d at 87. In that case, the court based its conclusion on, among other things, the board's express authority to borrow money, issue and sell bonds, convey real estate, and pay debts out of rents collected from property it owned. *Id.* at 314-15, 159 N.W.2d at 87. More importantly, we believe, the *Majerus* court emphasized that the armory board was expressly declared by its enabling statute to be "a body politic and corporate," with the power "to sue and be sued." *Id.* at 315, 159 N.W.2d at 87. River Ridge asserts that the planning commission is in a similar situation because sec. 66.945, Stats., gives it similar powers. We disagree. The planning commission does not possess the powers enumerated in *Majerus*: most specifically, it is not designated by law as a body politic and corporate with the express power to sue and be sued.

In the last case, *Sullivan*, the supreme court held that the Board of Regents of Normal Schools was protected by sovereign immunity because, under the terms of its enabling statute, it was no more than an arm or agency of the state: it had no power to raise money by taxation, it could not incur any liability beyond the amount appropriated to it by act of the legislature, and its funds could only be disbursed on a warrant drawn by the secretary of state. *Sullivan*, 209 Wis. at 244, 244 N.W. at 564.

River Ridge maintains that the planning commission is unlike the board of regents. It asserts that, because the planning commission "has the power to tax," "holds its own property and can dispose of the property without express authority from the state," and "holds its own funds and can disburse them when necessary," it has proprietary powers and thus, under *Sullivan*, must be held to be sufficiently independent to be sued on its own. Again, we are not persuaded.

First, while the commission is authorized under sec. 66.945(14), Stats., to prepare an annual budget and charge participating local governmental units a proportionate share of its operating expenses, the commission itself has no power to levy taxes. Nor is it expressly authorized to hold real property. *Sullivan* does not materially advance River Ridge's argument.

The exception to sovereign immunity which is triggered when the state creates an independent agency having proprietary powers is a "traditionally narrow exception," *Kegonsa*, 87 Wis. 2d at 144, 274 N.W.2d at 604, and while it is true, as we have said, that the regional planning commission possesses certain proprietary powers, River Ridge has not satisfied us that the commission is sufficiently independent of the state to be sued independently — especially in light of the supreme court's statements to the contrary in *Kegonsa*.[3]

---

[3] River Ridge also argues that, even if the commission is considered an arm of the state, it is not entitled to sovereign immunity in this instance because, in failing to issue a letter of consistency regarding the sewer extension, it acted beyond its statutory powers.

We reject this argument. River Ridge cites no authority to support its contention that the commission is "statutorily obli-

## II. Taking Claim

█

River Ridge next argues that, by refusing to issue
the letter certifying the proposed extension's compli-
ance or consistency with adopted regional plans, the
commission effectively "took" its property without just
compensation in violation of its due process rights.
Claims based on the taking of private property for pub-
lic use without just compensation are not barred by
sovereign immunity, even though the legislature has
failed to establish specific procedures for securing com-
pensation. *Zinn v. State*, 112 Wis. 2d 417, 435, 334
N.W.2d 67, 75-76 (1983). We thus consider the merits
of the claim.

In its amended complaint, River Ridge alleges
that: (1) the commission "denied [River Ridge] econom-
ically viable use of its land by its actions to prevent
development on this property"; (2) the commission has
"manipulated and intervened [in the matter], thus
destroying the value of [River Ridge's] investment"; (3)
if the commission's "attempts to block the develop-
ment" are successful, it will "depriv[e] [River Ridge] of
substantially all of the use of its property"; (4) the com-
mission has "illegally imposed" restrictions on the
property; and (5) River Ridge has not been compen-
sated for the taking.

█

We conclude, as did the trial court, that River
Ridge has failed to state a claim that the commission
"took" its property without just compensation. Article I,
section 13 of the Wisconsin Constitution provides that:
"The property of no person shall be taken for public use

---

gated" to issue letters declaring a project to be consistent with
adopted plans when its own findings mandate a contrary result.

without just compensation therefor." We recently summarized the pertinent law in *Reel Enters. v. City of La Crosse*, 146 Wis. 2d 662, 674, 431 N.W.2d 743, 749 (Ct. App. 1988):

> In the absence of its physical occupancy or possession, private property can be taken for public use only by state, county or municipal action which imposes a *legally enforceable* restriction on the use of the property. If a *legally enforceable* restriction is imposed on that use, then a taking occurs only if the restriction deprives the owner of all, or practically all, of the use. (Emphasis added.)

River Ridge's complaint fails on both points: it does not allege that the commission has imposed a legally enforceable restriction on its property, nor does it set forth facts indicating that it has been deprived of "all, or practically all," of its property.

In *Howell Plaza, Inc. v. State Highway Comm'n*, 92 Wis. 2d 74, 284 N.W.2d 887 (1979) (*Howell Plaza II*), a developer claimed that the highway commission had taken his land without just compensation when, after several years of activity directed toward acquiring the property, the commission abandoned all efforts to that end as a result of an investigation into the legality of its acquisition procedures. The developer asserted that he had had several prospective tenants who would have benefitted from the location of the highway project, but that "no one would deal with him" after the commission refused to purchase his property to proceed with construction of the highway. As a result, the developer claimed that he was "unable to develop [his] land," and that the commission's actions had "deprive[d him] of all, or substantially all, of the beneficial use of [his]

property" during that time. *Id.* at 78, 284 N.W.2d at 889.

The supreme court rejected the argument, holding that the highway commission had not "taken" the developer's land in the constitutional sense because, first, it lacked any legal authority to restrict development on the land short of actual condemnation and, further, its actions, at most, only hindered development "temporarily." *Howell Plaza II*, 92 Wis. 2d at 86, 284 N.W.2d at 893. According to the court, "[i]f petitioner was in fact unable to develop [his] property, it was not due to any restriction imposed upon [the property] by the commission, but to the uncertainty of the future status of [the] land." *Id.* at 89, 284 N.W.2d at 894.

And so it is here. River Ridge has failed to allege that the commission imposed any legally enforceable restrictions on the use of its property. As the trial court noted, the commission's determination that the sewer extension was not consistent with applicable regional plans was merely advisory and did not legally bind the sewerage district to reject the proposed extension.[4]

While River Ridge alleges in its complaint that the commission's actions "depriv[ed it] of substantially all of the use of its property" and "halt[ed] any beneficial use [of the property]," we considered similarly broad allegations in *Howell Plaza, Inc. v. State Highway Comm'n*, 66 Wis. 2d 720, 727, 226 N.W.2d 185, 189 (1975) (*Howell Plaza I*), to be mere legal conclusions, unsupported by specific factual allegations, and thus

---

[4] As noted above, sec. 66.945(8), Stats., states that "[t]he functions of the regional planning commission shall be *solely advisory* to the local governments and local government officials comprising the region." (Emphasis added.)

inadequate to state a cause of action for a taking of private property.

River Ridge argues, however, that under *Lockary v. Kayfetz*, 908 F.2d 543, 546 (9th Cir. 1990), *amended*, 917 F.2d 1150 (9th Cir. 1990), it need only allege that "a major portion of the land's value [has been destroyed]" to state a "taking" claim. We note first that federal court decisions — other than United States Supreme Court decisions on questions of federal law — are not binding on us. *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 307, 340 N.W.2d 704, 713 (1983); *State v. Webster*, 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474, 478 (1983).

Even so, the *Lockary* court went on to hold that "[w]hether a regulation denies landowners all economically viable use of their land requires consideration of the existence of other permissible uses of that land." *Lockary*, 908 F.2d at 547. Here, River Ridge merely alleges that it has been restricted from a single avenue of development: a 101-lot residential subdivision. It does not assert that any restrictions placed on its land in its current status have rendered it "useless for all reasonable purposes." *Zinn*, 112 Wis. 2d at 424, 334 N.W.2d at 70.[5]

---

[5] In this regard, River Ridge argues at length that the trial court erred in relying on *Reel Enterprises* as one of the cases justifying dismissal of its "taking" claim. It points out that that case involved an inverse condemnation claim, which, it maintains, requires a "legally enforceable" restriction against the complainant's property. In contrast, River Ridge asserts that it is only alleging that the commission committed a "regulatory taking" by imposing *illegal* restrictions on its property.

The distinction misses us. We agree with the commission that *Reel Enterprises was* a regulatory taking case: not only did

Finally, River Ridge argues that its complaint states a taking claim under federal law because, under *Gomez v. Toledo*, 446 U.S. 635 (1980), to do so a plaintiff need only allege that someone deprived it of a federal right while acting under color of state law or custom. *Id.* at 638.[6]

But the United States Supreme Court has held that to state a claim for the uncompensated taking of property by regulatory action, the property owner must obtain a final decision regarding the application of the regulations to his or her property: "It follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 348

---

the court fully discuss the law of taking in Wisconsin, it noted that the term "regulatory taking" is used to describe "a taking which results from officially imposed restraints on the use of property." *Reel Enters.*, 146 Wis. 2d at 671, 431 N.W.2d at 747. Indeed, the court's decision regarding whether a regulatory taking had occurred turned on whether the defendants (the City of La Crosse and the DNR) had imposed any legally enforceable restrictions on the property of the complainant. *Id.* at 666, 431 N.W.2d at 745.

River Ridge appears to contradict its argument in another portion of its brief when it states that "this Court . . . should find that the ruling of the [commission] constituted a *legally* imposed restriction on the [River Ridge] property." (Emphasis added.)

[6] In *Gomez*, a discharged employee brought a discrimination suit under 42 U.S.C. § 1983. *Gomez* is not a "taking" case under the fifth amendment to the United States Constitution and thus does not address the pleading requirements for such a claim.

(1986); *see also Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985).

As we have noted above, the commission is empowered by statute to give only *advisory* opinions; it is not authorized to issue binding decisions regarding the development of property — or even the extension of sewers. River Ridge has not stated a federal law "taking" claim against the commission.

*By the Court.*—Order affirmed.