KOSMATKA, and wife, Plaintiffs-Respondents, v. DEPART-
MENT OF NATURAL RESOURCES, Defendant-Appel-
lant.

*No. 75–225. Argued November 29, 1976.—Decided May 17, 1977.*
(Also reported in 253 N. W. 2d 887.)

For the appellant the cause was argued by *Linda M. Clifford,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondents there was a brief by *Donald M. Sanger,* attorney, and *Burton A. Strnad,* of counsel, both of Milwaukee, and oral argument by *Mr. Strnad.*

DAY, J. The Department of Natural Resources (DNR) appeals from a judgment entered in favor of the plaintiffs, Richard Kosmatka and Marian Kosmatka, his wife, which declared rights favorable to the plaintiffs with respect to maintenance of a structure referred to by both parties as a "pier" built into Lake Okauchee. The question is whether an unappealed DNR decision,

that the structure was prohibited under sec. 30.12, Stats. precluded this action for a declaration the structure was a permitted "pier" under sec. 30.13, Stats.

We hold that the trial court had no jurisdiction to proceed and that judgment should have been entered dismissing the action.

In 1970, the plaintiffs constructed a U-shaped structure extending into Lake Okauchee from their land. It consisted of two structures, one twenty-four feet long by three feet wide and the other twenty-eight feet long by three feet wide extending into the lake perpendicular to the shoreline and connected by another structure six feet wide, leaving an inside measurement of twenty-two feet by twenty-four feet. Because of the precipitous drop-off to twelve feet within twenty-four feet of the shore, a floor of metal sheets two to four feet deep below the surface was installed; also metal sheets enclosing the sides of the structure were erected to provide a safe swimming area for children.

The plaintiffs did not have a permit from the DNR for this structure and applied for such permit under sec. 30.12, Stats.[1] A public hearing on the application was

[1] "30.12 *Structures and deposits in navigable waters prohibited; exceptions; Penalty.* (1) GENERAL PROHIBITION. Unless a permit has been granted by the department pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:

"(a) To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or

"(b) To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line.

"2. *Permits To Place Structures Or Deposits In Navigable Waters.* (a) The department may, upon application and after notice and hearing, grant to any riparian owner a permit to build or maintain for his own use a structure otherwise prohibited by statute, provided such structure does not materially obstruct

held on October 30, 1972. The DNR issued findings of fact, conclusions of law and an order on June 29, 1975. The Department concluded that Mr. Kosmatka was a riparian owner under sec. 30.12; that the proposed structure constitutes a "structure otherwise prohibited by statute" within the meaning of sec. 30.12(2); and that the DNR has authority under sec. 30.12 to issue an order denying the requested permit. The order provided, "The application of Richard Kosmatka to place a structure on the bed of Okauchee Lake is denied."

In its findings of fact, the Department found that Okauchee is navigable in fact; that the purpose of the structure is to provide "an enclosed swimming pool area . . . and to provide boat mooring and recreational facilities"; "that the floor and the sidewalls of the structure obstruct the free movement of water both vertically and horizontally in the area of the structure"; that "the proposed piers and swimming area interfere with the public's rights to boating, fishing and swimming in Lake Okauchee"; and that, "the project that the applicant proposes would constitute a material obstruction to . . . navigation . . . ." Finally, it stated, "it is not in the public interest to authorize the construction of the proposed structure on Okauchee Lake."

Mr. Kosmatka did not seek judicial review of the order. Sometime between that order and the commencement of this action, the DNR initiated action through the district attorney charging an illegal structure on the bed of the lake. The details of this matter are not clear from the record.

On August 5, 1974 (approximately thirteen months after the DNR order), Mr. and Mrs. Kosmatka commenced the instant declaratory judgment action in Dane County circuit court. They prayed for a judgment "de-

navigation or reduce the effective flood flow capacity of a stream and is not detrimental to the public interest. . . ."

termining that the plaintiffs may properly, without permit, maintain and use the pier described herein, without penalty" and for such other relief deemed appropriate by the court. The complaint stated declaratory relief was requested because DNR threatened to file a criminal complaint seeking the penalty provided in sec. 30.12(3),[2] unless the "pier" was immediately removed.

DNR's answer alleged a criminal citation issued against Richard Kosmatka was pending in the Waukesha County Court with an appearance scheduled for September 17, 1974. This allegation was by way of an affirmative defense that the issues to be tried in the criminal action were identical to the issues in this action and therefore the plaintiffs' instant complaint did not state an action for a declaratory judgment. The plaintiffs' brief states the criminal action was subsequently dismissed. The record before us is silent as to why and when the action was dismissed, but the trial court found that the DNR itself had dismissed the action.

Another affirmative defense was that the Kosmatkas failed to pursue judicial review of the June 29, 1975 DNR order pursuant to Chapter 227 and that such review was the exclusive remedy; therefore the complaint did not state facts sufficient to constitute a cause of action for a declaratory judgment. In addition, the DNR answer denied that the structure was a "pier"; denied the complaint's conclusion that no permit was necessary, and admitted that a DNR warden had warned the plaintiffs he might initiate criminal prosecution under sec. 30.12.

The DNR submitted affidavits and moved for summary judgment based on the pleadings and the affidavits on October 1, 1974.

---

[2] "30.12 *Structures and deposits in navigable waters prohibited; exceptions; penalty.* . . . (3) Any person violating this section or any term or condition of a permit issued pursuant thereto shall be fined not more than $1,000 or imprisoned not more than 6 months or both."

Richard Kosmatka filed an affidavit stating that subsequent to the DNR hearing, he removed the side walls of the structure which the examiner found interfered with the flow of water and he rearranged the submerged "floor" so that it did not touch the bed of the lake nor otherwise interfere with the flow of the water. He further stated he believed the structure to be a pier and that if the DNR contended there was a violation of the statute, the Kosmatkas were entitled to a hearing under sec. 30.14, Stats.[3]

The trial court entered summary judgment for the Kosmatkas on May 22 1975. In its memorandum decision the court concluded that it need not reach the question of whether it was bound by the findings of the DNR that the structure was prohibited by sec. 30.12, Stats. All plaintiffs sought was a declaration the structure was a pier under sec. 30.13, which requires no permit unless following a hearing under sec. 30.14(2), the structure is shown to be in violation of sec. 30.13. "The denial of a permit does not bar an assertion that no permit is needed."

The court declared the structure was a pier which could be maintained without a permit pursuant to sec. 30.13, Stats. unless and until the structure was found to violate sec. 30.13, following proceedings under sec. 30.14, or sec. 30.15.[4]

---

[3] "30.14 *Reports of and hearings on violations.* . . . (2) HEARING BY DEPARTMENT. Upon complaint by any person to the department that any wharf, pier or other structure exists in navigable water in violation of s. 30.12 or s. 30.13 or that any wharf, pier or other structure proposed to be built in navigable water will violate s. 30.12 or 30.13, the department shall hold a hearing thereon to determine whether such structure is or will be in violation of those sections."

[4] "30.15 *Penalty for unlawful obstruction of navigable waters.* (1) OBSTRUCTIONS PENALIZED. Any person who does any of the following shall forfeit not more than $50 for each offense: ". . .

Summary judgment may be awarded, as it was in this case, to the plaintiff though it was the defendant who moved for it.[5]

With respect to summary judgment, this court has said:

" '. . . Summary judgment is proper only where there is no material issue of fact and the question presented is solely one of law. If there is a dispute as to the material facts, if different inferences might be drawn from the facts, or if the application of the controlling law to the facts is uncertain, summary judgment should not be granted.' " *Lawver v. Boling,* 71 Wis.2d 408, 413, 414, 238 N.W.2d 514 (1976); *College Mobile Home Park & Sales v. Hoffmann,* 72 Wis.2d 514, 521, 241 N.W.2d 174, 178 (1976); *Fed. Deposit Ins. Corp. v. First Mortg. Investors,* 76 Wis.2d 151, 154–155, 250 N.W.2d 362 (1977).

When an answer alleges a defense which is prima facie established by documents or public records, judgment may be entered for the defendant unless the plaintiff shows facts sufficient to raise an issue with respect to the verity or conclusiveness of such documents or records. Sec. 270.635(6), Stats. 1973. *See, Ricchio v. Oberst,* 76 Wis.2d 545, 551, 251 N.W.2d 781 (1977).

"(d) Constructs or places any structure or deposits any material in navigable waters in violation of s. 30.12 or 30.13.

". . .

"(4) OBSTRUCTIONS ARE PUBLIC NUISANCES. Every obstruction constructed or maintained in or over any navigable waters of this state in violation of this chapter and every violation of s. 30.12 or 30.13 is declared to be a public nuisance, and the construction thereof may be enjoined and the maintenance thereof may be abated by action at the suit of the state or any citizen thereof."

[5] "270.635 *Summary Judgments.* . . . (3) Upon motion by a defendant, if it shall appear to the court that the plaintiff is entitled to a summary judgment, it may be awarded to him even though he has not moved therefor."

The defendant DNR alleged the instant declaratory judgment proceeding was in effect an attempt to review the June 29, 1973 DNR decision which concluded the structure in controversy was a "structure otherwise prohibited by statute" within the meaning of sec. 30.12(2), Stats. The defendant alleged the exclusive remedy for review of the DNR decision and order denying a sec. 30.12 permit was judicial review under c. 227.

On appeal, the plaintiffs do not refute the general proposition that where a specified statutory remedy exists that remedy is exclusive. The plaintiffs insist the declaratory judgment action is not a review of the administrative hearing. On this point, the trial court agreed.

In its memorandum decision, the court writes:

". . . had the plaintiffs asked for a declaration that they are entitled to a sec. 30.12(2) permit, the court might well be bound by the DNR decision denying such permit. Instead, plaintiffs asked the court to declare merely that their structure is a pier, which by sec. 30.13 (1) requires no permit, unless following a hearing pursuant to sec. 30.14(2), it is shown to be in violation of sec. 30.13. The denial of a permit does not bar an assertion that no permit is needed. . . ."

We conclude that the trial court erred in reading secs. 30.12 and 30.13, Stats. in isolation of each other. Whether intended or not, the granting of a declaratory judgment in favor of the plaintiff had the effect of improperly bypassing the review of the DNR administrative order under Chapter 227, Stats. (1973). If no permit was needed because the structure was in fact a pier, authorized under sec. 30.13, that was a matter which should have been taken as a grounds for appeal under sec. 227.20, Stats. That section provided the court could affirm the decision of the agency or reverse or modify it if

the substantial rights of the appellant were prejudiced as a result of the administrative findings, inferences, conclusions or decisions.

As we read the relevant statutes, secs. 30.13 and 30.12, Stats. must be read together. The DNR finding the structure was prohibited under sec. 30.12 necessarily meant it was not a pier authorized under sec. 30.13. Whether the structure was prohibited under sec. 30.12 or permitted, as an authorized pier, under sec. 30.13, was but a single issue to be decided at one hearing. The DNR, having held that hearing and made a decision, the proper remedy was an appeal under c. 227.

Sec. 30.14(2), Stats. provides:

"30.14 *Reports Of and Hearing On Violations.* . . . (2) *Hearings By Department.* Upon complaint by any person to the department that any wharf, pier or other structure exists in navigable water in violation of s. 30.12 or s. 30.13 or that any wharf, pier or other structure proposed to be built in navigable water will violate s. 30.12 or 30.13, the department shall hold a hearing thereon to determine whether such structure is or will be in violation of those sections."

To treat secs. 30.12 and 30.13 as unrelated would ignore the internal structure of those sections each of which refers to the other.[6]

We also note the DNR found the structure to have characteristics prohibited under *both* secs. 30.12 and 30.13 though it did not expressly so state. For example, the DNR found the structure obstructed the free movement of water vertically and horizontally and interfered with the public's right to boating and navigation. These characteristics could make even a "pier" unlawful under sec. 30.13. With these findings, the direction of the court

---

[6] Sec. 30.12(1) states the general prohibition in that section "(u)nless . . . the legislature has otherwise authorized. . . ." Sec. 30.13(1) specifically provides sec. 30.12 is inapplicable if certain conditions are met.

that the DNR should bring an action under sec. 30.14(2) would require the DNR to do again what it already has done by its denial of the permit.

The trial court's decision the structure was a sec. 30.13 authorized pier necessarily reversed the DNR order that the structure was prohibited by sec. 30.12, since a prerequisite of the DNR finding was that the structure was not otherwise authorized by the Legislature. Sec. 30.12 (1). Thus, the question becomes whether the court was authorized to reverse the DNR order.

Sec. 227.15, Stats. of the Administrative Procedure Act provides:

"227.15 *Judicial Review; Orders Reviewable.* Administrative decisions which directly affect the legal rights, duties or privileges of any person, whether affirmative or negative in form, except the decisions of the department of revenue, the commissioner of banking and the commissioner of savings and loan, shall be subject to judicial review as provided in this chapter; but if specific statutory provisions require a petition for rehearing as a condition precedent, review shall be afforded only after such petition is filed and determined."

Sec. 227.16 states the procedure by which an aggrieved party may obtain court review of an administrative decision. Such review must be initiated within thirty days after the service of the decision upon all the parties. The lower court had before it an affidavit that the decision was served and that no review as provided by C. 227 was sought.

This court has repeatedly held that where a specified method of review is prescribed by an act creating a new right or conferring a new power, the method so prescribed is exclusive. E.g., *Master Disposal, Inc. v. Village of Menomonee Falls,* 60 Wis.2d 653, 657, 211 N.W.2d 477 (1973) ; *Superior v. Committee on Water Pollution,* 263

Wis. 23, 26, 56 N.W.2d 501 (1953). It has also been stated that:

"(W)here an appeal is provided, it is incumbent upon a litigant to pursue the stautory appeal to its conclusion. He cannot circumvent the statutory scheme by striking out anew and by asking another tribunal to rule on the identical point at issue." *Adoption of Shawn*, 65 Wis.2d 190, 198, 222 N.W.2d 139 (1974).

The right of appeal from a stautory administrative tribunal in a c. 227 proceeding is dependent upon strict compliance with that chapter. *Claflin v. Department of Natural Resources*, 58 Wis.2d 182, 187, 206 N.W.2d 392 (1973).

We also note a second reason declaratory relief was inappropriate. The trial court, obviously cognizant of the several conditions which must be met to permit a pier under sec. 30.13, qualified its judgment by deciding no permit was necessary "unless and until the structure is found to violate sec. 30.13 . . . following a lawful hearing in that respect" brought pursuant to sec. 30.14 (2). This declaration of rights by the trial court was so tentative and contingent on DNR action that the declaratory judgment would not finally settle the controversy and was thus not "ripe." *See, Lister v. Board of Regents*, 72 Wis.2d 282, 309, 240 N.W.2d 610 (1976); *Pension Management, Inc. v. DuRose*, 58 Wis.2d 122, 133, 205 N.W.2d 553 (1973).

The Kosmatkas argue that they have made substantial changes in the structure subsequent to the DNR proceedings. The Kosmatkas may again petition the DNR for a new hearing and fact finding. We point out that the DNR must give a factual basis for any conclusion that a structure constitutes a material interference with navigation. Without such factual basis, it is impossible for the riparian owner to correct the problem and enjoy his or her riparian rights without the fear of further litigation. Length and width of the structure as well as

the size of the body of water and the abutting lots involved all may be relevant factors; what factors are decisive should appear in the record.

*By the Court.*—Judgment reversed.