PHILLIPS PLASTICS CORPORATION, a Wisconsin corporation, Plaintiff-Appellant,

v.

DEPARTMENT OF NATURAL RESOURCES of the state of Wisconsin, Defendant-Respondent.†

Court of Appeals

*No. 80–093. Argued July 17, 1980.—Decided August 26, 1980.*
(Also reported in 297 N.W.2d 69.)

For the plaintiff-appellant there were briefs by *Robert Horowitz* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison, and *Stephen D. Willett* and *Olson & Willett, S.C.* of Phillips, of counsel, and oral argument by *Robert Horowitz*.

For the defendant-respondent there was a brief by *Bronson C. La Follette*, attorney general, and *Raymond M. Roder*, assistant attorney general, and oral argument by *Raymond M. Roder*, assistant attorney general.

† Petition to review denied.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. This appeal is from an order granting summary judgment to the defendant and denying the plaintiff's summary judgment motion. The plaintiff seeks a declaratory judgment as to the validity of an administrative rule regulating the discharge of pollutants. The issues raised concern the propriety of challenging an administrative rule by bringing an action for declaratory judgment after an enforcement action has been commenced by the state, and the validity of an agency rule setting standards of performance as part of the state's "Pollution Discharge Elimination" law.

The plaintiff operates a plant in Medford which manufactures plastic knobs. The Department of Natural Resources (DNR) issued a Wisconsin Pollutant Discharge Elimination System (WPDES) permit to the plaintiff on June 26, 1975, for the discharge of cooling water into the Black River. On November 10, 1976, the plaintiff requested that its WPDES permit be modified to authorize the discharge of additional pollutants which would result from an electroplating process to be added to the Medford plant.

No pollutant[1] may be discharged into the waters of this state unless the discharger complies with ch. 147, Stats., "Pollution Discharge Elimination." Chapter 147 is based on the Federal Water Pollution Control Act Amendments of 1972, Pub. L. No. 92–500, 86 Stat. 816 (codified at 33 U.S.C. secs. 1251–1376). The federal law requires dischargers to obtain pollution discharge elimination permits, but grants states the option of ad-

[1] Section 147.015(3), Stats., defines "pollutant" as follows:
"Pollutant" means any dredged spoil, solid waste, incinerator residue, sewage, garbage, refuse, oil, sewage sludge, munitions, chemical wastes, biological materials, radioactive substance, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal and agricultural waste discharged into water.

ministering their own permit programs.[2] Wisconsin elected to do so, and accordingly adopted ch. 147. *See Wis. Elec. Power Co. v. Wis. Natural Resources Bd.,* 90 Wis.2d 656, 663–64, 280 N.W.2d 218 (1979).

Chapter 147, Stats., requires the DNR to establish a list of categories of point sources[3] at least as comprehensive as that established by the federal Environmental Protection Agency (EPA). Sec. 147.04(1). The DNR must also establish effluent limitations for each category of point source, sec. 147.04(2), and must promulgate standards of performance[4] which apply to all new sources[5] within a category, sec. 147.06. The DNR has met these obligations by enacting the rules contained in Wis. Adm. Code, chs. NR 220 to 297.

At the time the plaintiff applied for a modification of its WPDES permit, both the EPA and the DNR had

---

[2] 33 U.S.C. sec. 1342.

[3] Section 147.015(8), Stats., defines "point source" as follows: "Point source" means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation or vessel or other floating craft from which pollutants may be discharged either into the waters of this state or into a publicly owned treatment works.

[4] Section 147.06, Stats., provides in pertinent part:

(1) The department shall, by rule, promulgate standards of performance for each class or category of sources . . . which shall reflect the greatest degree of effluent reduction achievable through the application of the best available demonstrated control technology, processes, operating methods, or other alternatives. Where practicable, a standard of performance permitting no discharge of pollutants shall be adopted.

(2)(a) Standards of performance adopted under this section shall apply to all new sources within each class or category of sources for which a standard of performance has been adopted under this section.

[5] Section 147.06(2)(b), Stats., defines "new source" as follows:

The term "new source" means any source, the construction of which commenced after the adoption of the standard of performance applicable to the category of sources of which it is a member.

promulgated standards of performance for electroplating. *See* 39 Fed. Reg. 11,510 (1974) ; Wis. Adm. Code, sec. NR 260.12. The relevant DNR standards were identical to the EPA standards.

On December 3, 1976, the EPA revoked the standards of performance for electroplating. The explanation for the revocation was as follows:

The gathering and examination of data are not yet sufficiently complete to permit the formulation of final conclusions; however, results to date indicate that there may be certain inaccuracies and inequities in the operation of the current scheme. In particular, recent analyses suggest that the present regulations may in some respects impose too stringent a standard upon small firms while falling short of requiring the levels of reduction practicable in the largest plants. 41 Fed. Reg. 53018 (1976).

On May 31, 1977, the plaintiff's WPDES permit was modified in accordance with the standards of performance set forth in sec. NR 260.12, Wis. Adm. Code, to permit discharges from the electroplating operation. The plaintiff began electroplating in October, 1977.

On February 28, 1979, the State of Wisconsin commenced an action in the Circuit Court of Taylor County against the plaintiff, alleging that the plaintiff had exceeded the discharge limitations imposed by its WPDES permit with respect to several specified pollutants. The state sought an injunction against further discharges in excess of the permit limitations, and a monetary forfeiture pursuant to sec. 147.21 (2), Stats.

The plaintiff received a stay of the Taylor County action in order to commence the present declaratory judgment action in Dane County. The plaintiff contended that sec. NR 260.12, Wis. Adm. Code, is invalid, because the standards of performance contained in that regulation exceed the now nonexistent federal standards of performance for electroplating. Thus, the plaintiff as-

serts that sec. NR 260.12 is in violation of sec. 147.021, Stats.,[6] which provides that the DNR's rules relating to point sources shall not exceed the requirements of the federal act.

Both the plaintiff and the defendant moved for summary judgment in the Dane County action. The court granted summary judgment for the defendant and dismissed the action. The plaintiff appeals from that ruling.

Two issues are raised on appeal:

(1) Is the plaintiff entitled to seek declaratory relief under sec. 227.05, Stats., to determine the validity of Wis. Adm. Code, ch. NR 260?

(2) If the plaintiff is entitled to seek declaratory relief, is Wis. Adm. Code, sec. NR 260.12 in violation of the mandate of sec. 147.021, Stats., and thus invalid?

The plaintiff commenced this action seeking a declaratory judgment as to the validity of the DNR standards of performance for electroplating pursuant to sec. 227.05, Stats. Section 227.05 provides, in pertinent part, as follows:

(1) Except as provided in sub. (2), the exclusive means of judicial review of the validity of a rule shall be an action for declaratory judgment as to the validity of such rule brought in the circuit court for Dane county. . . . A declaratory judgment may be rendered whether or not the plaintiff has first requested the agency to pass upon the validity of the rule in question.

(2) The validity of a rule may be determined in any of the following judicial proceedings when material therein:

[6] Section 147.021, Stats., provides:

All rules adopted by the department pursuant to this chapter as they relate to point source discharges, effluent limitations, water quality related limitations, municipal monitoring requirements, standards of performance and toxic and pretreatment effluent standards shall comply with and not exceed the requirements of the federal water pollution control act amendments of 1972, P.L. 92–500 and regulations adopted pursuant thereto.

(a) Any civil proceeding by the state or any officer or agency thereof to enforce a statute or to recover thereunder, provided such proceeding is not based upon a matter as to which the opposing party is accorded an administrative review or a judicial review by other provisions of the statutes and such opposing party has failed to exercise such right to review so accorded;

(b) Criminal prosecutions;

(c) Proceedings or prosecutions for violations of county or municipal ordinances;

(d) Habeas corpus proceedings relating to criminal prosecution;

(e) Proceedings under s. 56.07(7), 56.21, 66.191 or 101.22 or ss. 227.15 to 227.21 or under ch. 102, 108 or 949 for review of decisions and orders of administrative agencies if the validity of the rule involved was duly challenged in the proceeding before the agency in which the order or decision sought to be reviewed was made or entered.

(3) In any judicial proceeding other than one set out above, in which the invalidity of a rule is material to the cause of action or any defense thereto, the assertion of such invalidity shall be set forth in the pleading of the party so maintaining the invalidity of such rule in that proceeding. The party so asserting the invalidity of such rule shall, within 30 days after the service of the pleading in which he sets forth such invalidity, apply to the court in which such proceedings are had for an order suspending the trial of said proceeding until after a determination of the validity of said rule in an action for declaratory judgment under sub. (1) hereof.

. . . .

(b) . . . After the final disposition of the declaratory judgment action the court shall be bound by and apply the judgment so entered in the trial of the proceeding in which the invalidity of the rule is asserted.

The parties disagree in their interpretations of this statute. The defendant, looking at the first sentence in subsec. (1), contends that the phrase "[e]xcept as provided in sub. (2)" means that if a rule may be challenged in a proceeding under subsec. (2), a separate action for declaratory relief under subsec. (1) is not available. The

defendant further argues that since administrative review of the permit conditions was available under sec. 147.20, Stats., the plaintiff's failure to exercise that review bars it from seeking review of the rule under sec. 227.05, Stats. The defendant concludes that since the plaintiff would have had a remedy under subsec. (2) but failed to avail itself of it, a remedy under subsec. (1) is now barred.

The plaintiff, on the other hand, reads "[e]xcept as provided in sub. (2)" as providing an additional remedy which is an exception to the generally exclusive nature of subsec. (1). The plaintiff argues that it is unimportant whether a remedy is or would have been available under subsec. (2). It points to what it considers to be the clearest sentence in the statute in support of its position: "A declaratory judgment may be rendered whether or not the plaintiff has first requested the agency to pass upon the validity of the rule in question." Sec. 227.05 (1), Stats.

We believe the plaintiff misreads the statute. The key to its interpretation lies in the first sentence of subsec. (3) : "In any judicial proceeding other than one set out above," the proceeding may be stayed in order to bring an action for declaratory judgment pursuant to subsec. (1). Once a judicial proceeding has been commenced in which a party seeks to challenge the validity of an administrative rule, the declaratory judgment procedure created by subsec. (1) is a means of making that challenge only if the proceeding is one other than those listed in subsec. (2). If the proceeding fits into subsec. (2), a party who wishes to challenge a rule must do so as part of that proceeding.

The dispositive question is therefore whether the Taylor County action fits into the classifications of proceedings found in sec. 227.05 (2), Stats. It is clear that the

Taylor County action meets the first test of subsec. (2) (a), since it is a civil proceeding by a state agency to enforce a statute and recover thereunder. A challenge to the validity of a rule under that subsection is only available, however, if the Taylor County proceeding "is not based upon a matter as to which the opposing party is accorded an administrative review or a judicial review by other provisions of the statutes and such opposing party has failed to exercise such right to review so accorded." Sec. 227.05 (2) (a).

The parties disagree as to whether judicial review was available to the plaintiff by other statutory provisions to determine the validity of sec. NR 260.12, Wis. Adm. Code. The defendant contends that review was available pursuant to sec. 147.20, Stats. The plaintiff claims that sec. 147.20 allows for review of "the reasonableness of or necessity for any term or condition of any issued or modified permit," and that this scope of review does not encompass challenges to the validity of administrative rules. Thus, the plaintiff argues that administrative review of sec. NR 260.12 is available only through sec. 227.05, Stats.

Section 147.20, Stats., provides in pertinent part:

(1) Any permit applicant, permittee, affected state or 5 or more persons may secure a review by the department of any permit denial, modification, suspension or revocation, the reasonableness of or necessity for any term or condition of any issued or modified permit, . . . .

. . . .

(2) The decisions of the department issued under this section shall be subject to judicial review as provided in ss. 227.15 to 227.21.

These provisions limit review of permit terms to a determination of whether the terms are reasonable and necessary. They do not authorize the DNR to determine whether its rules are valid. Nor would the scope of re-

view be greater in the reviewing court under sec. 227.-15, Stats., since the exclusive means of judicial review of the validity of a rule is provided in sec. 227.05. Thus, the plaintiff had no right to administrative or judicial review of the validity of the rule other than by commencing an action under sec. 227.05.[7]

Because the Taylor County action is a proceeding which is based upon a matter as to which the plaintiff was accorded no opportunity for administrative or judicial review by provision of any statute other than sec. 227.05, Stats., the validity of the administrative rule may be determined in the Taylor County proceeding. Since the plaintiff may raise the validity of the rule under subsec. (2), it may not bring a declaratory judgment action under subsec. (1). We therefore hold that the trial court was correct in granting summary judgment for the defendant and dismissing the plaintiff's case.

Because we hold that it was improper to seek a declaratory judgment in this case, we need not reach the question of whether sec. NR 260.12, Wis. Adm. Code, is

[7] The defendant draws our attention to *Niagara of Wis. Paper Corp. v. DNR*, 84 Wis.2d 32, 268 N.W.2d 153 (1978), asserting that in that case the supreme court indicated that sec. 147.20, Stats., is an appropriate mechanism for challenging the validity of a rule which underlies permit limitations. It does appear that the validity of a DNR rule was challenged through that route in the *Niagara* case. The supreme court did not address the issue of whether sec. 147.20 was an appropriate vehicle for making the challenge, and an examination of the briefs filed in that case reveals that this issue was not put before it. The DNR's brief in *Niagara* acknowledged that Niagara indirectly raised the validity of a rule by challenging the appropriateness of the permit's limitations based on that rule, but neither party discussed whether the indirect attack fell within the scope of sec. 147.20. Because the supreme court was not called upon to decide this issue, we do not consider *Niagara* to be authority for the proposition that the validity of a rule may properly be challenged under sec. 147.20.

a valid rule. The plaintiff is free under sec. 227.05 (2) (a), Stats., to litigate that issue in the Taylor County action if it wishes to do so.

*By the Court.*—Order affirmed.