SEWERAGE COMMISSION OF the CITY OF MILWAUKEE, and Metropolitan Sewerage commission of the county of Milwaukee, Plaintiffs-Respondents-Petitioners,†

v.

DEPARTMENT OF NATURAL RESOURCES, Defendant-Appellant.

Supreme Court

*No. 79–884. Argued March 4, 1981.—Decided June 30, 1981.*

(Also reported in 307 N.W.2d 189.)

For the petitioners the cause was argued by *James H. Petersen,* senior staff attorney, with whom on the briefs was *Michael J. McCabe,* director of legal services of Milwaukee Metropolitan Sewerage District.

For the appellant the cause was argued by *Steven B. Wickland,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Brief for United States of America as amicus curiae was filed by *Angus MacBeth,* deputy assistant attorney general, *Dirk D. Snel* and *Martin W. Matzen,* attorneys,

† Motion for reconsideration denied, without costs, on August 11, 1981.

Department of Justice of Washington, D. C., *Michelle B. Corash,* general counsel, *David M. Sims,* assistant regional counsel, Environmental Protection Agency, Region V, Chicago, Illinois.

HEFFERNAN, J.   This case is before us upon a petition by the Sewerage Commission of the City of Milwaukee and the Metropolitan Sewerage Commission of the county of Milwaukee for review of a decision of the court of appeals,[1] which reversed the trial court's grant of summary judgment to the commissions.  Contrary to the trial court, the court of appeals rejected the commissions' declaratory challenge to the Department of Natural Resources' (DNR) administrative authority, under governing state and federal law, to require the commissions to achieve effluent limitations by means of secondary treatment prior to July 1, 1977.  The court of appeals held that the DNR had such authority and remanded the cause for trial of the DNR's counterclaim for forfeitures based on alleged noncompliance with effluent discharge permits occurring before that date.  The court of appeals did not reach the DNR's claim that the commissions had waived their only procedural avenue of judicial review, an argument which the trial court had rejected.

We hold that the commissions did, in fact, waive their only opportunity for judicial review and, thus, that the declaratory action should have been dismissed; and we therefore find it unnecessary to decide in this case whether the department had the contested authority to require publicly owned treatment works to achieve effluent limitations by secondary treatment prior to July 1, 1977.  Accordingly, we vacate the decision of the court of appeals and remand the cause to the trial court for dismissal

---

[1] 98 Wis.2d 464, 297 N.W.2d 40 (Ct. App. 1980).

of the commissions' declaratory action and for further proceedings consistent with this opinion.

On December 18, 1974, the Department of Natural Resources, pursuant to ch. 147, Stats. 1973, issued to the Sewerage Commission of the City of Milwaukee a permit to discharge certain effluents from its South Shore Plant. The permit required the plant to achieve effluent limitations by means of secondary treatment (and to achieve applicable water quality treatment standards) by January 1, 1975. A similar permit governing the commission's Jones Island plant was issued on December 27, 1974, compliance to be achieved on the date of issuance. In early 1975 the commission petitioned the department for clarification of certain terms and conditions of the permits, but did not at that time challenge the department's authority to impose the stated dates for achievement of the limitations.

Faced with threats by the DNR to bring enforcement action for alleged noncompliance with the terms of the permits, the city commission on July 7, 1976, filed a declaratory judgment action under sec. 227.05 (1), Stats., in the circuit court for Dane county. The complaint alleged that governing federal and state statutes, the Federal Water Pollution Control Amendments of 1972 and ch. 147, Stats., did not require publicly owned treatment works to achieve effluent limitations until July 1, 1977 (*see* Federal Water Pollution Control Act Amendments of 1972, Pub. L. No. 92–500, 86 Stat. 816, 844–45, sec. 301(b)(1), *codified at* 33 U.S.C. sec. 1311(b)(1) (1976); secs. 147.021, 147.04(3)(a), Stats. (1973, 1975)). The commission thus sought a declaration that NR 210.10, the department's administrative rule[2] which

---

[2] NR 210.10 was first promulgated as an "emergency administrative rule pursuant to sec. 227.027, Stats. 1973, effective for one year beginning February 1, 1974. *See* No. 218 Wis. Adm. Reg. 10 (February 1974). The text of the rule at the time the permits in this case were issued was as follows:

established particular effluent limitations and required achievement thereof "no later than July 1, 1977," was

## Chapter NR 210

### EFFLUENT LIMITATIONS FOR PUBLICLY OWNED TREATMENT WORKS WISCONSIN POLLUTANT DISCHARGE ELIMINATION SYSTEM

NR 210.01   Purpose
NR 210.10   Effluent limitations for publicly owned treatment works

**Note:** Pursuant to Chapter 74, Laws of 1973, in sections 147.04 (3) and (5) and under the procedure of section 227.027, Wis. Stats., the department of natural resources has promulgated interim effluent limitations which become effective February 1, 1974 and will remain in effect for a period of one year. These interim effluent limitations will be periodically replaced by permanent effluent limitations.

NR 210.01 Purpose. The purpose of this chapter is to establish minimum interim limitations for publicly owned treatment works pursuant to sections 147.04(3) and (5), Wis. Stats. More stringent limitations may be required where necessary to meet water quality standards in accordance with section 147.04(4), Wis. Stats.

**History:** Emerg. cr. eff. 2-1-74.

NR 210.10 Effluent limitations for publicly owned treatment works. (1) Publicly owned treatment works shall no later than July 1, 1977, achieve as a minimum all of the following effluent limitations except as provided under subsection (2) of this section.

(a) Biochemical oxygen demand (5 day)

1. The arithmetic mean of the values for effluent samples collected in a period of 30 consecutive days shall not exceed 30 milligrams per liter.

2. The arithmetic mean of the values for effluent samples collected in a period of 7 consecutive days shall not exceed 45 milligrams per liter.

3. The arithmetic mean of the values for effluent samples collected in a period of 30 consecutive days shall not exceed 15% of the arithmetic mean of the values for influent samples collected at approximately the same times during the same period (85% removal).

(b) Suspended solids

1. The arithmetic mean of the values for effluent samples collected in a period of 30 consecutive days shall not exceed 30 milligrams per liter.

*ultra vires* insofar as it purported to require (or to authorize the DNR to require) achievement before that date; and that the two permits were therefore void *ab initio* because they purported to require achievement of the stated limitations by, respectively, December 27, 1974, and January 1, 1975.

The department, in its answer, alleged that the governing federal and state statutory law did authorize it to require achievement of effluent limitations prior to July 1, 1977, and thus moved for summary judgment as to the validity of NR 210.10 and the permits issued thereunder. The department also counterclaimed under ch. 147, Stats., for civil forfeitures of $10,000 per day, totalling $670,000, for alleged violations of the permits, asserting that the

---

2. The arithmetic mean of the values for effluent samples collected in a period of 7 consecutive days shall not exceed 45 milligrams per liter.

3. The arithmetic mean of the values for effluent samples collected in a period of 30 consecutive days shall not exceed 15% of the arithmetic mean of the values for influent samples collected at approximately the same times during the same period (85% removal).

(c) Fecal coliform bacteria

1. The geometric mean of the value for effluent samples collected in a period of 30 consecutive days shall not exceed 200 per 100 milliliters.

2. The geometric mean of the values for effluent samples collected in a period of 7 consecutive days shall not exceed 400 per 100 milliliters.

(d) pH. The effluent values for pH shall remain within the limits of 6.0 to 9.0.

(e) Other Limitations. Permits will be issued to publicly owned treatment works which may impose effluent limitations applicable to pollutants other than biochemical oxygen demand, suspended solids, pH, and fecal coliform.

(f) Such limitations will reflect and take into consideration pretreatment requirements that may be imposed upon specific discharges to a given publicly owned treatment works and such pretreatment requirements will take into account levels of reductions which will be attainable by the given publicly owned treatment works by secondary treatment.

. . . . . .

two treatment plants, at various times from January 1975 (the time of compliance stated in the permits) to April 1976, released excessive amounts of biological oxygen-demanding wastes, total suspended solids, total phosphorous, and fecal coliform bacteria. The department further sought an injunction ordering compliance with the permits. The commission moved to dismiss the department's counterclaim due to the asserted invalidity of NR 210.10, the underlying administrative rule.

By stipulation of the parties, on May 25, 1977, the Metropolitan Sewerage Commission of the County of Milwaukee was made a party plaintiff.

On the same date, the court adopted as its judgment a detailed stipulation entered by the parties and designed to solve the sewage problem. The stipulation provided that the commissions would, *inter alia,* secure adequate federal and local funding to accomplish "[c]onsistent compliance with secondary treatment standards and the current phosphorous limitation contained in the permits . . . not later than July 1, 1982"; correct wet weather overflow problems; and restrict any future waste loads added to the systems in accordance with stated limits established for the years 1977 to 1982 (and thereafter, if violations of the secondary treatment requirements stated in the current permits occurred). The stipulation also provided that beginning July 1, 1977, the department would, every six months, monitor and audit the commissions' progress.

The parties also agreed that the original permits, which by their terms were to expire on June 30, 1977, would be re-issued with the same original effluent limitations and would require that all discharges "be eliminated by July 1, 1977 or meet secondary and applicable water quality related treatment standards by that date," and that this effective date would not be challenged. At oral argument before this court, which was held on

March 4, 1981, counsel for the DNR stated that the commissions had achieved the effluent limitations by secondary treatment in late 1977, and remained in compliance therewith to date.

The stipulation further provided, however, that the issues raised by the city commission's original declaratory judgment action would be decided by a court. These were whether, under governing federal and state statutory law, the DNR had authority to require achievement of the effluent limitations, by secondary treatment, prior to July 1, 1977—that is, whether NR 210.10, as interpreted by the DNR to authorize early compliance, was within statutory authority; and whether the original permits, issued under authority of the rule, were valid as to their early compliance date. The DNR's forfeiture counterclaim for alleged permit violations would lie, and be tried, only if the declaratory judgment issues were decided in favor of the DNR's administrative authority to require pre-July 1, 1977, compliance.

By memorandum decision dated February 19, 1979, Circuit Judge Eich ruled that federal and state statutory law did not authorize the DNR to require compliance for publicly owned treatment works before July 1, 1977. He held NR 210.10 to be facially valid because its requirement of achievement "no later than" July 1, 1977, could (despite the DNR's contrary interpretation) be read as establishing that date as the *earliest* time by which effluent limitations via secondary treatment could be required, and thus consistent with his reading of state and federal statutes; thus, he granted the department's motion for summary judgment as to the validity of the rule. However, he also ruled that the permits, which as a result of the department's interpretation and application of the rule expressly required achievement of the stated effluent limitations by January 1, 1975, did exceed the DNR's authority and were void insofar as they pur-

ported to establish any achievement date prior to July 1, 1977; thus, the DNR's counterclaim for forfeitures was dismissed. Judgment was entered accordingly on both rulings on April 26, 1979.

The DNR appealed from those parts of the judgment holding the permits invalid and dismissing its counterclaim for forfeitures. The court of appeals reversed and remanded for consideration of the DNR's counterclaim, holding that the DNR had the authority under federal and state law to require compliance before July 1, 1977.

We granted the commissions' petition for review initially to decide the question of the DNR's authority, under the FWPCA of 1972 and ch. 147, Stats., to require and enforce pre-July 1, 1977, achievement, by publicly owned treatment works, of effluent limitations by secondary treatment. Because of its disposition of the merits, however, the court of appeals did not reach a jurisdictional challenge (raised in and rejected by the trial court) by the DNR to judicial review of the permits' validity, a matter which we will address first in this opinion and which disposes of the matter on review.

The controlling question in this case is the timeliness and availability of judicial review of these administrative proceedings. The DNR contends that the circuit court never gained "subject matter jurisdiction" over the declaratory judgment action because that action was procedurally unavailable to the commissions. The DNR argues that the only way the commissions could properly challenge the DNR's administrative authority to require achievement of effluent limitations prior to July 1, 1977, was under sec. 147.20, Stats. 1973, by following the provisions of that statute—that is, by first making objection to the DNR, within sixty days of receiving the permits in December 1974, to the early compliance date stated therein, and then, if necessary, obtaining judicial review of the department's decision. The department contends that

these procedural provisions of sec. 147.20, Stats., are the exclusive form of challenge to the department's authority to require early compliance, and that the declaratory judgment action brought under sec. 227.05(1), Stats., against the rule (and the permits) is a tardy collateral attack that is not available.

The circuit court resolved this issue against the DNR, and the court of appeals found it unnecessary to reach. 98 Wis.2d at 468–69.

We conclude that the commissions' failure to challenge the department's authority under the procedures of sec. 147.20, Stats., precluded the later challenge under ch. 227, because sec. 147.20 is the exclusive method of administrative and judicial review of the department's action.

We note, at the outset, that the commissions characterize their declaratory judgment action, in the complaint and in their briefs, as attacking both NR 210.10, the administrative rule, and the permits. The attack on NR 210.10 is said to rest on the department's interpretation of the language therein—"no later than July 1, 1977"— as providing the alleged authority to require, in the permits, achievement of effluent limitations *prior* to that date. The attack on the permits themselves rests, by contrast, on their *express* requirement of achievement of such limitations at an earlier time, that is, January 1, 1975.

The substantive legal theory, however denominated, is the same: The department had no authority to require early compliance. The commissions' interest in this legal question, as entities affected by administrative action (or the threat thereof), initially "ripened" at the time the permits were issued, in December 1974, with their expressly stated early compliance dates. The threat of enforcement of the permits provided a later, secondary stimulus to the commissions' assertion of this legal interest. The validity of the underlying administrative rule

in this case is implicated only indirectly, by virtue of the department's interpretation thereof as authorizing the express early achievement dates stated in the permits, and by virtue of the fact that, as required by sec. 147.04 (3) (a), Stats. 1973,[3] the substantive numerical effluent limitations stated in the permits had been first promulgated as administrative rules (NR 210.10). Judge Eich properly determined that the rule's time element was not facially repugnant to governing state and federal statutes. Insofar as the rule, rather than the permits, is called into question at all in the case, such occurred when the commissions were subjected in a legal sense to the allegedly improper administrative action—that is, upon application of the rule by issuance of the permits with their express early compliance dates, and, secondarily, upon the threat of enforcement of the permits.

With this background we turn to the relevant statutes. The DNR's jurisdictional contention requires us in this case to reconcile sec. 147.20, Stats., providing particular procedures for administrative and judicial review of permits granted under ch. 147, with sec. 227.05, authorizing circuit court declaratory judgment actions against administrative rules.

Section 147.20, Stats., at the time the DNR issued the permits in December 1974, provided:

"**147.20 Review of permits, decisions, terms and conditions.** (1) Any . . . permittee . . . may secure a review by the department of . . . the reasonableness of or neces-

---

[3] "**147.04 Effluent limitations.**

"(3) The department shall by rule promulgate effluent limitations for publicly owned treatment works which shall require:

"(a) By July 1, 1977, secondary treatment for all publicly owned treatment works in existence on that date or approved prior to June 30, 1974, for which construction shall be completed within 4 years of approval;

". . . ."

sity for any term or condition of any issued or modified permit . . . . Such review shall be accomplished in the following manner:

"(a) A verified petition shall be filed with the secretary setting forth specifically the issue sought to be reviewed by the department. Such petition must be filed within 60 days after notice of any action which is reviewable under this section is issued by the department. The petition shall indicate the interest of the petitioners and the reasons why a hearing is warranted. Upon receipt of such petitions, the department shall circulate a notice of public hearing in accordance with the requirements of s. 147.09(1) at least 10 days prior to holding a public hearing thereon.

"(b) The department shall hold a public hearing at the time and place designated in the notice of hearing. At the beginning of each such hearing the petitioner shall present evidence to the department which is in support of the allegation made in the petition. All interested persons or their representative shall be afforded an opportunity to present facts, views or arguments relevant to the issues raised by the petitioners, and cross-examination shall be allowed. All matters concerning the permit denial, modification, suspension or revocation shall be considered de novo. No person shall be required to appear by attorney at any hearing under this section.

"(c) . . . .

"(d) The department shall issue its decision on the issues raised by the petitioner within 90 days after the close of the hearing.

"(2) The decisions of the department issued under this section shall be subject to judicial review as provided in ss. 227.15 to 227.21."

Under the provisions of sec. 147.20(1), Stats., the city commission did, within sixty days of issuance of the permits, petition the DNR for clarification and modification of several permit provisions; but this petition raised no question as to any aspect of the permits' legal propriety or the department's legal authority to write them as issued, with the stated achievement dates of January 1, 1975.

Section 147.20(1), Stats., uses the words "reasonableness" and "necessity" of the terms and conditions of permits as bases for administrative and judicial review—terms which might be viewed as importing, for the purposes of scope of such review, only questions of fact, policy, or administrative discretion, rather than legality in the sense of statutory authority to take a particular action. But sec. 147.20(2) clearly states that the department's decisions on permit disputes are subject to judicial review under secs. 227.15 to 227.21. The scope of such review includes inquiry as to whether the department's action was "[i]n excess of . . . statutory authority or jurisdiction . . . , or affected by other error of law; . . . ." Sec. 227.20(1)(b), Stats. 1973.[4]

We think it clear that excess of administrative authority is a proper ground of challenge to a permit under sec. 147.20. In discussing a very similar statute to sec. 147.20—sec. 144.56, Stats. 1951—we implicitly recognized that the terms "necessity" and "reasonableness" of an administrative order, when coupled to judicial review under ch. 227, included the question of the agency's legal authority, under its governing statutes, to take the particular action. *See Superior v. Committee on Water Pollution,* 263 Wis. 23, 56 N.W.2d 501 (1953). The "order" at issue in that case was analogous to the "permits" in this one.

Beyond the fact that sec. 147.20, Stats., on its face encompasses a legal challenge to permits such as that raised by the commissions in the present case, there are sound reasons for so construing the statute in the particular light of the ch. 147 permit program. The policies of both the FWPCA and of ch. 147, Stats., reveal a strong commitment to timely achievement of the control of effluent discharges within technological capacity to do

---

[4] This basis of review appears in the 1975, and subsequent statutes, in sec. 227.20(5), (8).

so. The department and the permittee should be given every opportunity to negotiate and resolve, at the earliest possible date, mutually acceptable terms and conditions of permits issued under ch. 147. Early resolution of both factual and legal disputes over permit terms (see, e.g., *Niagara of Wis. Paper Corp. v. DNR*, 84 Wis.2d 32, 268 N.W.2d 153 (1978), involving both types of matters) is well served by requiring, as does sec. 147.20, first, the negotiation of such matters between the department and the permit holder, as envisioned by the sixty-day period established for administrative appeal; and, second, timely appeal (thirty days; *see* sec. 227.16), if necessary, to the courts for resolution of matters as to which agreement cannot be reached before the agency.

As one example of such a process, we note that ch. 147 allows, as an alternative to absolute fixed-date effluent limitations like those imposed in this case, the negotiation of "schedules of compliance." Such schedules (which fall within the definition of "effluent limitation," sec. 147.015(4), Stats. 1973), are "remedial measures including an enforceable sequence of actions or operations leading to compliance with an effluent limitation . . . ." Sec. 147.015(5), Stats. 1973. Thus, in the present case, if the commissions doubted either their technological, managerial, financial, or other capacity to fully comply with the permits at the stated early date, or if they doubted the department's authority to require such early compliance, resolution of either issue would have been timely accomplished by their following the provisions for administrative and judicial review under sec. 147.20. The commissions could have challenged either the technical reasonableness or the legality of the stated compliance date, and the matter would have been resolved quickly at either the administrative or the judicial level, by development of a compliance schedule or by a ruling as to the legality of the permits. Such a challenge is "ripe,"

both as to fact and law, at the time the permits are issued; no delay is either necessary or appropriate.

We have indicated above that the critical legal events in this case were the issuance and threatened enforcement of the permits, whether viewed as separate from, or as expressing administrative application and implementation of, the underlying rule, NR 210.10. We recognize, however, that where, as here, a permit is issued under authority of a rule, the characterization of which of these two manifestations of agency policy constitutes administrative "action" may sometimes be blurred.

Regardless of how the DNR's exercise of its asserted authority to require early compliance is characterized, however—as being done via "permit," "rule," or both— the commissions, had they wished, could also have posed a timely declaratory challenge to the rule itself, had they followed the review prescribed in sec. 147.20, Stats. The means for doing so would have been sec. 227.05(2) (e), Stats. 1973. That section provides:

"227.05 **Declaratory judgment proceedings.**

"(2) The validity of a rule may be determined in any of the following judicial proceedings when material therein:

"(e) Proceedings under ss. 227.15 to 227.21 . . . for review of decisions and orders of administrative agencies provided the validity of the rule involved was duly challenged in the proceeding before the agency in which the order or decision sought to be reviewed was made or entered."

Under sec. 147.20(2), Stats., the DNR's ruling on a challenge by a permit holder to the reasonableness or necessity of terms or conditions of the permit is expressly characterized as a "decision" judicially reviewable under secs. 227.15 to 227.21. Therefore, a declaratory challenge to the validity of the rule (NR 210.10) underlying such decision was available under the clear and unambiguous

terms of sec. 227.05(2)(e). Under that statute, the only prerequisites for such a challenge would be that the validity of the rule first be raised before the agency, and that judicial review thereof be undertaken within thirty days of the DNR's decision on the permit review (sec. 227.16(1), Stats.).

In other words, a declaratory challenge to the validity of a rule on which a permit is based *is* available under sec. 147.20, Stats., in joint operation with ch. 227. The only requirements are that such a challenge raised pursuant to the procedural dictates of sec. 147.20 must first be sought at the agency level within sixty days of issuance of the permit; the underlying rule must be challenged at that time; and within thirty days of the department's decision thereon, judicial review may be sought, including the raising of a declaratory challenge to the rule.

This meshing of sec. 147.20 and sec. 227.05(2)(e) is not only clear from the language of the statutes, but is sound policy in light of ch. 147. The same considerations underlying the propriety of early review of the legal terms of a permit under sec. 147.20 apply where permits have been issued and the legal challenge is made to the rule itself. Timely review and resolution of the controversy, in the interest of statutorily mandated progress against degradation of water resources, is equally applicable whether the challenge denominates itself an attack on a permit alone, or on a permit and its underlying rule.

Moreover, we emphasize that the controversy "ripens" precisely at the time of issuance of the permits. The challenge in this case to the permit and rule is based on the legal authority of the department to require early achievement. The resolution of the controversy depends solely on the construction of federal law (sec. 301(b)(1) of the FWPCA of 1972, 33 U.S.C. sec. 1311(b)(1) (1976)) and state law (sec. 147.021, Stats. 1973, and sec.

147.04(3)(a), Stats. 1973, and NR 210.10). These laws were all in effect and ready for construction at the time the commissions obtained their permits. No subsequent developments of fact or law would alter the legal questions posed. Thus, there was no reason to delay resolution of the controversy at that time.

We conclude, therefore, that sec. 147.20 authorizes a permit holder to challenge the legality, and not just the factual reasonableness, of administrative action in setting permit terms and conditions. We also conclude that sec. 227.05(2)(e), Stats., if it is invoked upon timely judicial review of a department decision on a permit-review pursuant to compliance with the procedural terms of sec. 147.20, authorizes a declaratory challenge to the validity of the rule underlying the permit. We note that in an earlier case, without addressing the issue, we assumed, as we decided in this case, that a declaratory challenge to the validity of a rule may properly be raised pursuant to sec. 147.20. *See Niagara of Wis. Paper Corp. v. DNR,* 84 Wis.2d 32, 268 N.W.2d 153 (1978). To the extent that a different conclusion was recently reached by the court of appeals in *Phillips Plastics Corp. v. Natural Resources Dept.,* 98 Wis.2d 524, 531–32, 297 N.W.2d 69 (Ct. App. 1980), we disavow that conclusion.

Having construed sec. 147.20, Stats., in conjunction with sec. 227.05(2)(e), as proper vehicles for early administrative and judicial review of the legal controversy in this case, we must now determine whether these procedures are exclusive—that is, whether, in light of their availability, the commissions' declaratory judgment action against the rule and permits, brought one-and-one-half years later under sec. 227.05(1), will lie.

Section 227.05, Stats. 1973 and 1975, provided in relevant part:

"227.05 **Declaratory judgment proceedings.** (1) Except as provided in sub. (2), the exclusive means of judicial

review of the validity of a rule shall be an action for declaratory judgment as to the validity of such rule brought in the circuit court for Dane county. . . . The court shall render a declaratory judgment in such action only when it appears from the complaint and the supporting evidence that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff. A declaratory judgment may be rendered whether or not the plaintiff has first requested the agency to pass upon the validity of the rule in question.

"(2) The validity of a rule may be determined in any of the following judicial proceedings when material therein:

"(a) Any civil proceeding by the state or any officer or agency thereof to enforce a statute or to recover thereunder, provided such proceeding is not based upon a matter as to which the opposing party is accorded an administrative review or a judicial review by other provisions of the statutes and such opposing party has failed to exercise such right to review so accorded;

" . . .

"(4) In any proceeding pursuant to this section for judicial review of a rule, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without compliance with statutory rule-making procedures."

Section 227.05(1), Stats., makes a declaratory judgment action the "exclusive" means of judicial review of the validity of a rule, subject to exceptions stated in sub. (2) (one of which, sub. (2)(e), we have held was available in this case). This language in sec. 227.05(1) appears to express a preference for use of sec. 227.05(1) as a procedural forum. And when brought under this subsection, the party need not have first requested the administrative agency to pass on the validity of the rule in question.

The question is thus whether this stated preference for use of sec. 227.05(1), Stats., to challenge the legiti-

macy of an administrative rule is superseded by sec. 147.20, read in conjunction with sec. 227.05(2)(e). We hold that it is.

We have often stated that, where a specified method of review is prescribed by an act creating a new right or conferring a new power, the method so prescribed is exclusive. *Kosmatka v. DNR,* 77 Wis.2d 558, 567, 253 N.W.2d 887 (1977). Especially where the particular scheme of review established provides a statutory remedy that is "plain, speedy, and adequate," it will generally be deemed exclusive. *Kegonsa Jt. Sanit. Dist. v. City of Stoughton,* 87 Wis.2d 131, 274 N.W.2d 598 (1979).

These criteria are met in the present case. Section 147.20, Stats., provides full access to both the administrative agency and the courts for review of permits and the rules underlying them, as to issues of both fact and law. The relief that can be granted pursuant to review under the prescribed procedures—which includes declaratory relief against the rule's validity—is plenary, fully as satisfactory as relief that could be granted by later declaratory judgment action under sec. 227.05(1). It is, moreover, timely—which serves the interests of the parties, the efficient administration of controversies by both the DNR and the reviewing courts, and the policies of the water pollution control legislation.

In the case of *Superior v. Committee on Water Pollution,* 263 Wis. 23, 26, 56 N.W.2d 501 (1953), we held that sec. 144.56, Stats. 1951, which is procedurally almost identical to sec. 147.20, provided the exclusive means by which the city of Superior could challenge an agency's administrative authority underlying an order respecting the city's sewage treatment facilities. The city's failure to obtain review under the terms of sec. 144.56—which, like sec. 147.20, included judicial review in accordance with ch. 227 subsequent to the agency's review of the challenge—was fatal to a declaratory judgment action.

We recognize some distinguishing features of *Superior*. The declaratory judgment action therein was not against a "rule" but against an "order," and was thus not, apparently, brought under sec. 227.05, Stats., but under the general declaratory judgment statutes. Nonetheless, we find the central rationale of *Superior* persuasive: Administrative action for which a statutory means of review is provided should not be subject to collateral attack in a different forum or under different procedures; where "a specified method of review is prescribed by statute, the method so prescribed is exclusive." *Id.* at 27.

We find this conclusion especially compelling in light of the fact that here—unlike *Superior*—the party affected by administrative action did have an express, early opportunity to seek declaratory relief under ch. 227 (sec. 227.05(2)(e)), but did not avail itself of that forum. Thus our conclusion precluding later challenge under sec. 227.05(1) is considerably less strict or harsh, in a practical sense, than was our holding in *Superior*.

The policy reasons for such a result in the context of the rules underlying permits issued under ch. 147, Stats., are clear and compelling. As we stated earlier in this opinion, the timely resolution of both factual and legal disputes is very important to the progress against environmental pollution which is envisaged by ch. 147. Full relief—including declaratory relief against the validity of a rule—is available at that time. A party affected by administrative action does not lose any rights, remedies, or forums by the preclusion of a later declaratory challenge under sec. 227.05(1). Its rights and remedies under sec. 147.20 are the same. It merely must raise them in accordance with the time requirements of that section. To allow a party to accept, without complaint, the legal terms of a permit issued under sec. 147.02 (1973) and then later to challenge those same legal terms by bringing a sec. 227.05(1) action against the

underlying rule, on a legal theory which would have been equally applicable, available, and ripe at the time the permits were issued, would be to authorize or encourage "lying in the weeds."[5] Whether such delay in advancing a legal objection to agency action was caused by bad faith, or merely by good faith noncompliance for legitimate reasons, we do not think sec. 227.05(1) is, or ought to be, available as an end run around administrative and judicial review of the department's action at the time the permits are issued.

We note that ch. 147, Stats., contains a "savings clause." Section 147.27 provides, "Except as provided in this chapter, nothing in this chapter shall be deemed to supersede any other statute or session law." The commissions nowhere refer to this statute or suggest that it preserves the availability of a declaratory challenge under sec. 227.05(1). We agree with the implication raised by their silence. First, it seems likely that this section is designed to preserve the department's authority to regulate water pollution and quality under other statutes (see, e.g., ch. 144, Stats.) in the event of any arguably apparent conflict or displacement thereof by ch. 147. And, second, we conclude that, even if the statute is intended to have a broader scope which would cover procedural remedies, sec. 147.20, as we have construed

---

[5] This case does not involve any change in the law, subsequent to the issuance of the permits, which would affect the validity of the permits as issued. Compare Niagara of Wis. Paper Corp., supra, where the issue was whether the DNR could enforce an original permit in light of a subsequent change in federal regulations, which resulted in the issued permit being more stringent than federal law, which is prohibited by sec. 147.021, Stats. (1973). We recognize that, where there has been a change in the law after the allowed time for "early" review provided by sec. 147.20 has passed, a declaratory action under sec. 227.05(1) or, in the alternative, defense to an enforcement action under sec. 227.05 (2)(a), might be proper. However, these matters are not before us in this case.

it in relation to sec. 227.05(2)(e), does meet the requirement "as provided in this chapter" (sec. 147.27, Stats.) such that it supersedes review under sec. 227.05(1). The "savings clause," sec. 147.27, does not, therefore, preserve the availability of a late declaratory judgment action under sec. 227.05(1).

One final matter may be of relevance in further proceedings upon remand, and we therefore address it at this juncture.

Section 227.05(2)(a), Stats., provides that, where the state brings a civil proceeding to enforce a statute (such as the DNR has brought in its counterclaim here under authority of secs. 147.21 and 147.29), the affected party (the commissions) may at that time challenge the validity of the rule—unless there is some other statutory access to administrative review, of which the party has not availed itself. In such a circumstance, this statute clearly seems to contemplate that the defense of invalidity of the rule is waived. Since we have held that sec. 147.20, in conjunction with sec. 227.05(2)(e), does provide such alternative statutory access to challenge the validity of NR 210.10, and the commissions did not avail themselves of such review, we hold that the defense of invalidity of the rule, as asserted by the commissions against the DNR's counterclaim for forfeitures, is unavailable.

We conclude that the declaratory action brought by the commissions against the permits and the rule was unavailable to them, inasmuch as the exclusive procedure for review, un-utilized by the commissions, was sec. 147.20, Stats., in conjunction with sec. 227.05(2)(e). We therefore hold that the commissions' declaratory action should have been dismissed. The DNR's counterclaim for forfeitures, however, will lie, in accord with both governing law[6] and the parties' stipulation. We

---

[6] The counterclaim states a separate action, authorized by ch. 147, Stats., and meets the requirement of sec. 802.07(1), that "A

intimate no view of the merits of this counterclaim, and although the commissions may not interpose a defense based on the alleged illegality of the timetable imposed for achievement of effluent limitations by secondary treatment, they are, of course, free to argue any mitigating factors which would explain noncompliance with the terms of the permits. We note, in this connection, a comment by the Fourth Circuit Court of Appeals:

"Our holding in this case does not mean that, absent Congressional action, severe sanctions will inevitably be imposed on municipalities who, despite good faith efforts, are economically or physically unable to comply . . . . We fully expect that, in the exercise of its prosecutorial discretion, EPA will decline to bring enforcement proceedings against such municipalities. Furthermore, in cases where enforcement proceedings are brought . . . the courts retain equitable discretion to determine whether and to what extent fines and injunctive sanctions should be imposed for violations brought about by good faith inability to comply . . . . In exercising such discretion, EPA and the district courts should, of course, consider the extent to which a community's inability to comply results from municipal profligacy." *State Water Control Board v. Train,* 559 F.2d 921, 927–28 (4th Cir. 1977).

*By the Court.*—The decision of the court of appeals is vacated; the judgment of the trial court is vacated insofar as it upheld the validity of the rule, voided the permits, and dismissed the DNR's counterclaim for forfeitures. The cause is remanded to the trial court for dismissal of the commissions' action for declaratory relief and for further proceedings not inconsistent with this opinion.

---

defendant may counterclaim any claim which the defendant has against a plaintiff, upon which a judgment may be had in the action." Barring some jurisdictional defect not raised or brought to our attention, the counterclaim survives dismissal of the primary claim.

STEINMETZ, J. (*dissenting*). I disagree with the majority's opinion which disposes of this case on a procedural basis.

Sec. 147.20(1), Stats., provides that any permittee *may* secure review by the department of the reasonableness or necessity of any condition of a permit. Further, sec. 147.20(2) specifies: "The decisions of the department issued under this section shall be subject to judicial review as provided in ss. 227.15 to 227.21."

Sec. 227.05(2)(e), Stats., appears to require as a condition precedent for judicial review that a review had been requested before the department. The relevant language in the statute cited by the majority is as follows: "*provided* the validity of the rule involved was duly challenged in the proceeding before the agency . . . ." (Emphasis added.)

The majority opinion attempts to explain what is an obvious conflict in the two sections. I would hold that sec. 227.05(1), Stats., is clear, controlling and eliminates the conflict. It states: "A declaratory judgment may be rendered *whether or not* the plaintiff has first requested the agency to pass upon the validity of the rule in question." (Emphasis added.)

Since the majority has decided this case on procedural grounds, I will not comment on the merits of the case dealing with the jurisdiction of the department to issue the permits as it did. I believe, however, that the correct procedures were followed below and that, consequently, this court should reach the substantive issue.

I am authorized to state that Mr. Justice JOHN L. COFFEY joins in this dissent.